JERRY O'MARA, Appellant, v. JAMES JENSMA.

**Drainage:** INSTRUCTION : HARMLESS ERROR : WORDS AND PHRASES.
1  In this action for damages alleged to have resulted from the
construction of an embankment by defendant, casting the surface
water upon plaintiff's land, the only evidence of the construction
of an embankment located the same some distance from the
boundary line between the farms of plaintiff and defendant, and
therefore, a reference in the instructions of the court, to an em-
bankment "along or on the line" was not prejudicial, even if an
inaccurate description, as the jury could not have been misled.
Besides the word "on" when used to indicate relative situation
means at, near, or adjacent to, without implying contact or sup-
port.

**Drainage of surface water:** INSTRUCTION.  As the evidence tended
2  to show that defendant's grantor had so furrowed his land, that
it tended to drain the water into the ditch, and that plaintiff's land
had been so plowed near the line, that it had a tendency to direct
the course of the water, an instruction that if the parties
farmed their land near the ditch so as to drain the water into it,
and this was the understanding of the parties, the plowing would
be considered a part of the ditch, was not erroneous, because hav-
ing no support in the evidence.

**Same:** DRAINS : DUTY TO CLEAN SAME.  Where a ditch has been con-
3  structed by agreement of the parties and recognized as a water-
way, neither party can be compelled to clear it of rubbish, although
either has the right to do so. .

**Same:** INSTRUCTION : HARMLESS ERROR.  An instruction that the
4  owner of higher land cannot collect the surface water and dis-
charge it onto lower adjoining land in a different manner than it
naturally flowed, was not prejudicial, because ignoring the right
of a land owner to drain his land into a natural depression run-
ning through the lower land and thus emptying it into a defined
water course, where there had been no attempt to thus discharge
the water, except by means of a ditch constructed by agreement;
and the charge could have no bearing except on plaintiff's right to
open the ditch and thus allow the water to flow onto defendant's
land, and was so applied in a subsequent charge of the court.

**Same:**  In this action for damages, resulting from the construction

of an embankment and the filling of a ditch running from plaintiff's land onto that of defendant, the petition making no reference to the ditch, except that it had become filled up, and by the construction of an embankment, the water was caused to flow back onto plaintiff's land, an instruction referring to the ditch as the main ditch, though misleading the jury into the belief that the ditch was a water course capable of carrying off all the water, was not prejudicial.

**Evidence:** EXCLUSION: SUBSEQUENT SHOWING OF COMPETENCY. Where plaintiff had testified that the embankment constructed by defendant along the ditch, was built after the injury of which plaintiff complains occurred, the evidence concerning the same was properly stricken; and the fact that the evidence was subsequently rendered competent by testimony, that the embankment was built prior to the injury, did not render the ruling erroneous, the plaintiff having made no request for reinstatement of the evidence.

*Appeal from Jasper District Court.*—HON. BYRON W. PRESTON, Judge.

THURSDAY, JUNE 3, 1909.

ACTION for damages, in which the defendant set up a counterclaim. Judgment was entered for the defendant, from which the plaintiff appeals.—*Affirmed.*

*Tripp & Tripp,* for appellant.

*Mowry & Cross,* for appellee.

LADD, J.—The plaintiff owned the N. ½ of S. W. ¼ of section 12, and the defendant the N. ½ of S. E. ¼ of the same section. There was a depression or a swale through the plaintiff's land and on through that of the defendant to the southeast. Previous to the defendant's acquisition of the land, a ditch had been excavated in the plaintiff's land through that of defendant which appears to have carried the water off. Prior to that a ditch had been dug under the fence about two rods north

by the plaintiff and the then owner of defendant's land, Lavelleur. This, according to Lavelleur, was filled up when the ditch first mentioned was excavated, though plaintiff says it was left open. Both testified it was a failure. There may have been a swale still farther north, but no evidence of injury therefrom was adduced. In excavating the ditch last made in plaintiff's land, the earth was thrown on both sides, but only on the north side on defendant's land, with the design of preventing the water from flowing on the low ground north of the ditch. Also defendant's grantors back-furrowed from the ditch to the north line, creating a rise of several inches. This was reversed by defendant, who turned the furrows toward the line to level the land. Plaintiff testified that this tended to stop the free passage of the water and in connection with other testimony that defendant by back-furrowing and by the use of the spade constructed a levee from ten to twenty or thirty feet east of the line, and also filled up the ditch under the fence, thereby throwing the surface water back on plaintiff's land to his damage; while evidence of defendant explained how he had turned the furrow toward the line, that he had not filled the ditch, and, if clogged, this was due to the accumulation of debris therein without fault on his part, and that the water had not backed up on plaintiff's land as alleged, but stood there naturally. In support of his counterclaim, the evidence tended to show that openings through the north bank of the ditch had been cut letting the water through on defendant's land to his damage. The evidence was such as to carry the several issues to the jury.

I. In stating the issues to the jury, and in several instructions, the court referred to the embankment or levee as alleged by plaintiff to have been located and maintained "along or on" the west line of defendant's land, and appellant insists that this was erroneous, as the petition described levee as "along or near," and the evidence

disclosed that it was ten or twenty feet east of the line

1. DRAINAGE:
instruction:
harmless error:
words and
phrases.

fence. There was no evidence of any embankment on the line, and the only evidence of any embankment or levee constructed by defendant pointed to that mentioned by the witness as some distance east of the line. The jury could not have understood the court's statements to have had reference to any other levee, and no prejudice could have resulted even were the description inaccurate; but, according to the lexicographers, when used as indicating relative situation or position, "on" means at, near, or adjacent to, without implying contact or support. 29 Cyc. 1484; *Barnam v. Banks,* 45 Mo. 349. And in connection with the evidence the language of the instruction plainly referred to the alleged levee near the line fence.

II. The court told the jury in substance, that if the parties farmed and plowed their land adjacent to the main ditch in such a way as to drain the water into it, and

2. DRAINAGE OF
SURFACE
WATER:
instruction.

this was the understanding of the parties, then such plowing and back-furrowing should be considered a part of the ditch. Exception is taken to this because not supported by the evidence and misleading. The defendant's grantors had back-furrowed from the ditch to the north line. This naturally tended to drain the water south into the ditch. The furrows had been turned toward the line fence on plaintiff's land, and near the fence it was considerably higher at most places than defendant's land. This would have a tendency to direct the course of the surface water and not only supported the instruction, but also warranted the giving of the seventh paragraph of the charge. Moreover, there was evidence of the accumulation of vegetation at the fence as mentioned tending to obstruct the flow of water and this without fault of the defendant.

The eighth instruction was to the effect that, if the main ditch had been constructed by agreement and was

recognized by the parties as the waterway, then neither party would be compelled to clear the ditch of rubbish, but either might do so. This was a correct statement of the law as far as it went, and, had plaintiff wished it more specific, an instruction should have been requested. No complaint was made in the petition with reference to any obstruction of the ditch by the accumulation of vegetation. Such evidence was pertinent only as tending to explain the accumulation of water complained of. Instruction nine, when considered with reference to the issues made in the pleading, was correct. Instruction ten is criticised for not correctly stating the measure of damages. Appellant is not in a situation to complain, as this was in accord with the only evidence introduced on the subject.

3. SAME: drains: duty to clean same.

III. In the instruction eleven, the court advised the jury in a general way of the law with reference to dominant and servient estates, saying that the owner "of the higher land can not collect water in a ditch, or otherwise, and cast it upon the lower owner in a different manner than it flowed by nature, nor in an increased quantity, nor has he the right to concentrate it and throw it upon the lower owner in a different manner than that in which it would naturally flow, and, if plaintiff did so to defendant's damage, then you should find for the defendant as to his counterclaim." This instruction is criticised for that it is said plantiff had the right to construct open or tile drains and cast the water into the swale to be carried away to Indian creek. See section 1989 a 53, Code Supp.; *Dorr v. Simerson,* 127 Iowa, 551; *Pohlman v. Railway,* 131 Iowa, 96. Conceding the criticism of this instruction to be well founded, it could have worked no prejudice for that the evidence did not indicate any attempt to concentrate the water on plaintiff's land save by the ditch excavated by agreement, and the instruction could have had no bearing

4. SAME: instruction: harmless error.

save on the claimed right of plaintiff to open up the ditch under the fence and allow the water to flow through the same on the defendant's land, and it was so applied in the instruction following.

IV. The ditch last constructed by Lavelleur and plaintiff is referred to in the instructions as the "main ditch," and it is said that this was misleading, in that it may have led the jury to understand the ditch was a water course, capable of carrying off all water. There was nothing in the instructions to so indicate, though there was evidence to show that it did carry off all the water in ordinary seasons. Moreover, the complaint in the petition is not with reference to this ditch, save by its alleged filling and the construction of the levee. If there were swales north of the ditch, the petition contained no claim of damages because thereof, but was based on the alleged flowing of water back on the plaintiff's land by the erection of a levee and the filling of a ditch. It is immaterial that the ditch when it reached the defendant's land may have been above a swale to the north, if it carried the water from the plaintiff's land successfully. Much is said of the circumstances that the dirt is banked on the north side of the ditch on the defendant's land, but this is no concern of the plaintiff. The design was to hold the water from the lower land, as was that in the excavation of the ditch around the knoll. How defendant might care for the surface water after being cast on his land as the servient estate was a problem solely for his solution and of no concern to plaintiff save as this might affect the free passage of water from his premises.

V. The fourth instruction requested was rightly refused, for there is nothing in the record indicating that the ditch was purely experimental. On the contrary, it had successfully carried the water from plaintiff's land.

On cross-examination plaintiff testified that the levee or embankment was constructed after the injury for which

he complained. Thereupon the defendant moved to strike the evidence concerning such levee from the record. The motion was sustained. There was no error in this. If subsequently it appeared that the levee was constructed prior to said injury, it was the duty of counsel to call the attention of the court thereto and ask that the evidence be reinstated. In the absence of such motion, there was no error, for the ruling was correct when made.

*6. Evidence: exclusion: subsequent showing of competency.*

The record is without prejudicial error, and the judgment is *affirmed*.