Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Forest View Land Company, Inc., v. Atlantic Coast Line Railroad Company.

January 11, 1917.

Absent, Prentis, J.*

1. Crossings—*Eminent Domain.*—A railroad in converting a grade crossing over a county road into an overhead or bridge crossing made embankments on the side of the road for some distance back from the bridge, and the location of the county road itself, at that point, was shifted some fifty feet further north, so that a thirty-acre tract of the plaintiff was entirely cut off by reason of the embankment, and by reason of an intervening strip of land, from access to the road. In constructing the overhead crossing and in making the slight alteration of the location, to straighten the road at the crossing, the railroad company acted under the authority and with the approval of the board of supervisors, pursuant to the provisions of section 1294-b, clause 3, of the Code of Virginia, which provides for a change in the location of a county road to avoid the necessity of any crossing, or frequent crossings. It was contended by plaintiff that as no crossing was in fact avoided, the aforesaid section did not apply.

   *Held,* however, in view of the declaration of policy of the State against grade crossings (Code, section 1294-d, clause 38), that the change made came well within the meaning of the section.

2. Deeds—*Construction.*—Under familiar and settled rules of construction, the court should look to the purpose of the conveyance as disclosed not only by its terms, but by the surrounding circumstances and the situation of the parties, and should resolve any doubt against the grantor.

3. Eminent Domain—*Release of Damages.*—A deed from plaintiff's predecessors in title to the defendant company, of additional strips of land, for which the consideration paid was materially in excess of the market value at that time, contained the following provision: "All such damages to the remainder of the

---

* Submitted before Judge Prentis took his seat.

tract of land of the parties of the first part by the construction of a railroad or railroad works on the land hereby conveyed as could be recovered in condemnation proceedings under the statutes are contained in the consideration for this conveyance and are hereby released."

*Held:* That the change in the location and the building of the bridge, referred to above, must be regarded as incident to the construction of railroad works on the land conveyed, and the damages therefrom, if any, to the residue of the tract, would have been recoverable under condemnation proceedings and were therefore barred by the release executed by plaintiff's predecessors.

4. DEEDS—*Construction—"On".*—The word "on" does not always or necessarily imply actual contact, and is not infrequently used to designate nearness in place or situation. Structures are often described as being on a street, or on a road, or on a stream, when in fact they do not physically touch the street, road, or stream.

Error to a judgment of the Circuit Court of Chesterfield county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Smith & Gordon* and *Jas. F. Minor,* for the plaintiff in error.

*William B. McIlwaine* and *E. P. Cox,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This action was brought by the Forest View Land Company against the Atlantic Coast Line Railroad Company to recover damages for an alleged taking of and damage to certain land belonging to the former company. There was a verdict for the defendant, and to a judgment by the trial court in accordance therewith the plaintiff obtained this writ of error.

The grievance complained of in the declaration was based upon certain changes in the grade of the defendant company's roadbed adjacent to the land involved, and also upon certain changes in the location and grades of two county roads known, respectively, as the Bon Air road and the River road, upon each of which the land abutted. In the course of the proceedings, however, the controversy has narrowed itself, as we understand the record, to the single question of the plaintiff's right to recover for a change in the location and grade of the River road.

The portion of the plaintiff's land directly affected by the changes thus complained of is a tract containing about 30 acres, bounded on the east, for 1925 feet, by the railroad right of way, on the south for more than half that distance by the Bon Air road, on the west and northwest, for 2437 feet, by other lands, and on the north for a distance of 38 feet by what was formerly and until changed by the defendant company, the south line of the River road. It will not be necessary for the purposes of this discussion to deal with the balance of plaintiff's land. This 30-acre tract, as may be inferred from the foregoing general description, lay mostly toward the Bon Air road, upon which it had an extensive frontage. On the side next to the River road it ran out to a narrow point, ending with 38 feet of frontage on the River road. There was no roadway over this point connecting the tract with the River road, and although such a connection could have been established, the character and condition of the land was not well adapted to that purpose. The Bon Air and River roads form a junction not far to the east of this land, thus giving the entire tract access to both.

The right of way through or along this property was originally acquired, and the railroad was originally built, in 1889. At that time the railroad crossed the Bon Air road at the south of the 30-acre tract and the River road at the north, not exactly at grade, but by what are usually called

"grade crossings." The tracks along this land and at these crossings are a part of a belt line, running around and to the west of the city of Richmond, forming a connection with the defendant company's main line south of the city. This connection was originally made in 1889, at Clopton, a station about three miles south of Richmond. In 1906, the defendant company planned some very extensive changes and improvements of this belt line, involving an increase of its tracks, a widening of its right of way, an extension of the line to a meeting point with the main line some three miles further south at Falling creek, an entire change of grades throughout, and the substitution of an overhead crossing or bridge instead of a grade crossing of the tracks at the River road. To this end, the company acquired, by deed dated August 23, 1906, from Eliza H. Schutte and her husband (the then owners of the property here involved), two additional strips of land adjoining the old right of way, one of which is approximately 60 feet wide, and, extending the entire distance between the Bon Air and the River roads, forms the eastern boundary of the above described 30-acre tract. The deed conveying these additional strips of land, for which the consideration paid was materially in excess of the market value at that time, contained the following provision: "All such damages to the remainder of the tract of land of the parties of the first part by the construction of a railroad or railroad works on the land hereby conveyed as could be recovered in condemnation proceedings under the statutes are contained in the consideration for this conveyance and are hereby released."

The plan for the readjustment, reconstruction and improvement of the belt line, which the evidence shows was in contemplation at or about the time when the deed was obtained, was not put into effect until the spring of 1912, about one year after the land alleged to be damaged thereby had been acquired by the plaintiff company. This delay is

not otherwise explained than by the suggestion of counsei that it was due to "the historical fact that in the fall of 1906, the winter of 1907 and for several years following, this country passed through times of great financial depression, and that individuals as well as public service corporations were required to exercise the strictest economy and to husband all their resources." This explanation seems entirely plausible, but whatever may have been the reason, nothing is disclosed whereby the delay may be held to have prejudiced the rights of the defendant company under its deed from Mr. and Mrs. Schutte.

Recurring now to the plaintiff's claim for damages, and to a more minute consideration of the complaint upon which, as finally reduced, its demand rests, we find the exact things complained of to be that in converting the grade crossing at the River road into an overhead or bridge crossing, embankments were made on the sides of the road for some distance back from the bridge, and that the location of the county road itself at that point was shifted some fifty feet further north, so that the thirty-acre tract is now entirely cut off, both by reason of the embankment and by reason of an intervening strip of land, from access to the River road. This, upon a careful analysis of the record, as it comes to us, is the whole of the plaintiff's case. Can it be maintained?

In constructing the overhead crossing and in making the slight alteration of the location (to straighten the road at the crossing), the defendant company acted under the authority and with the approval of the board of supervisors of the county, duly obtained pursuant to the provisions of section 1294-b, clause 3, of the Code of Virginia, which, so far as it need be quoted here, is as follows:

"If any railroad, canal, turnpike, or other public service corporation deems it necessary in the construction of its works to cross any other railroad, canal, turnpike, or works

of any other public service corporation, or any county road, it may do so; provided   *   *   *   If such company desires that the course of any other railroad, turnpike, canal, or other works shall be changed to avoid the necessity of any crossing, or frequent crossings of the same, the change may be made in such manner and on such terms as may be agreed on by the company desiring the change, and the company, person, or county owning or having charge of the works to be affected by such change. If any such crossing or change as is provided in this section cause damage to the works of any company, or of any county, or to the owner or occupant of any lands, the company exercising the privileges herein granted shall make proper compensation for such damage   *   *   *   but any county road, or stream, or water course, may be altered by any such company for the purposes aforesaid whenever it shall have made an equally convenient road or waterway in lieu thereof, the said company having first obtained the consent of the board of supervisors of the county to the alteration of any road or highway." (See in this connection *C. C. & O. R. Co.* v. *Board of Sup. Scott Co.,* 109 Va. 34, 38, 63 S. E. 412, *et seq.*

Counsel for the plaintiff contend that the foregoing section does not apply to the change made in the instant case, because, as they claim, no crossing was in fact avoided. We cannot accede to this view. It is true that the road still crosses the tracks at practically the same point as formerly, but the grade crossing is avoided, and, recalling the solemnly declared policy of this State against grade crossings (Code, sec. 1294-d, clause 38), we have no difficulty in holding that the change here made comes well within the meaning of the statute.

And with reference to the further contention of the plaintiff, that if the above section 1294-b (3) does *"purport* to authorize such changes as were made here, and in the mode

40

adopted without notice or hearing, the requirements of due process of law and just compensation were not obeyed," it is only necessary to say that, as will hereafter more fully appear, we regard the release above quoted as fully covering any compensation which the plaintiff might otherwise have demanded, and, therefore, the question of notice and due process of law does not arise.

A great deal of testimony was introduced at the trial, *pro* and *con*, relating to the alleged damage to the land. It was earnestly contended on behalf of the defendant that the plaintiff had in fact sustained no damage; and, if the case had come to us merely upon the sufficiency of the evidence to sustain the verdict for the defendant, we could very promptly and very properly affirm the judgment, with the simple comment that the verdict, to say the least of it, was not without abundant evidence to support it. The determinative question, however, presented by this writ of error involves the propriety and correctness of an instruction by which the trial court directed a verdict and ended the case in favor of the defendant. That instruction was as follows:

"The court instructs the jury that all the elements of damage claimed by the plaintiff in this case could be recovered in condemnation proceedings under the statutes of the State of Virginia, and as Eliza Schutte and Henry R. Schutte, her husband, the predecessors in title of the plaintiff, did receive payment for all such damage from the Atlantic Coast Line Railroad Company, and did release the same to the said company in a certain deed dated the 23rd day of August, 1906, introduced in evidence, the jury must find a verdict for the defendant."

It was the duty of the court to construe the release, and we are of opinion that this instruction embodied a correct interpretation thereof, and was, therefore, properly given.

It is not easy to conceive of a more comprehensive and far-reaching acquittance than the one in question; but if

we concede that there is doubt as to its application to the exact damages here claimed, then, under familiar and settled rules of construction, the court should look to the purpose of the conveyance as disclosed not only by its terms, but by the surrounding circumstances and the situation of the parties, and should resolve the doubt against the grantor. (2 Dev. on Deeds, 3rd ed., sec. 839, 848). In the present instance, as we have seen, it is reasonably clear from the evidence that substantially the same changes which were made at the River road crossing, as a part of "a comprehensive and unified scheme" for reducing grades and double-tracking the roadway from James river to Falling creek, were under contemplation at the date of the execution of the deed from Eliza and Henry Schutte. It does not affirmatively appear that these grantors actually knew of this scheme. Mr. Schutte, himself, who was examined as a witness for the plaintiff, was not interrogated as to their knowledge of these plans of the defendant at the time of the conveyance, and he made no statement upon the subject. But even if they did not actually know of the company's purpose, they must now be charged with notice of it. The railroad was already built through their land, upon a right of way acquired in 1889. They were paid a large price for the additional strip of land, and it is certain that damages of some kind to the residue of the tract were in the minds of the parties. What damages, if not those which the plaintiff is now seeking to recover? At all events, Mr. and Mrs. Schutte were paid for and executed a sweeping release, and their vendees are precluded from claiming compensation for any damage which falls within the fair interpretation of the language used to express the exemption.

It must be apparent that if the railroad company, instead of taking the deed from the owners of the land, had proceeded to acquire by condemnation proceeding the requisite additional strip together with the right to change the grades, shift the location of the crossing, construct the

316 Forest V. L. Co. *v.* Atlantic, &c., R. Co., 120 Va. 308.

Opinion.

overhead bridge, etc., it would of necessity have taken a course which would have brought under consideration for compensation the very elements of damage embraced in the plaintiff's demand. It could not have prosecuuted the "condemnation proceedings under the statutes" designated in the release without disclosing in advance, and as a matter of public record, "the cuts and fills, trestles and bridges" in contemplation, together with much other information, informing the property owner of the exact manner and extent to which his estate would be affected. (Code, sec. 1105-f (4) ; *Lanford* v. *Va. A. L. R. Co.,* 113 Va. 68, 71, 73 S. E. 566. Whether Mr. and Mrs. Schutte had all this information when they made the deed, we cannot say, but they at least saw fit to sell the land at a price which they stated over their hands and seals embraced "all such damages to the residue of the tract   *   *   *   by the construction of a railroad or railroad works on the land hereby conveyed as could be recovered in condemnation proceedings under the statutes;" and it seems to us clear that what the defendant company is charged with doing in this case must be regarded as incident to the construction of "railroad works" on the land conveyed, and the damage therefrom, if any, to the residue of the tract, such as would have been recoverable under condemnation proceedings. The bridge at the crossing was built and is maintained, as the law in such cases requires, by the railroad company.

In the case of *City of Richmond* v. *R. & D. R. Co.,* 21 Gratt. (62 Va.) 604, 608, Judge Staples, speaking for this court, said: "The word 'works' is one of very extensive signification. In military engineering, it means fortresses, fortifications, ramparts, bastions and the like. In civil engineering it is often applied to depots, engine-houses, bridges, embankments and other structures essential to the franchise and the proper conduct of a railway, or other work of public improvement."

In *Parker* v. *Boston &c. R. Co.*, 3 Cush. (Mass.) 107, 116, 50 Am. Dec. 709, Chief Justice Shaw, referring to a statute regulating the exercise of the right of eminent domain, said: "All these provisions are parts of the act, to be taken and construed together as one system of rules; and hence it appears that the raising of a common road, with an embankment of sufficient length on each side to form an easy slope to a high bridge, is a part of the franchise given by the charter, as much as the right to take private property or to pass over navigable waters. These bridges and the embankments extending laterally from them, are as much a part of the structure authorized by the charter as the railroad itself. This brings the case of one damnified by such structure within all the reasons and within all the provisions which give compensation for damages occasioned by the laying out, making and maintaining of the railroad."

The plaintiff contends, however, that it is not claiming against the release, and insists that the damages sued for are not covered thereby, because the location of the county road was shifted and the bridge actually built a few feet north of the road as originally located, so that there was not any actual physical contact of the structure with the strip conveyed, and hence no railroad works *"on the land."* If it be conceded that no part of the embankment and approach to the bridge on the west side of the track actually touches the strip conveyed to the defendant—a fact not shown clearly, if at all, by the record—the meaning sought to be ascribed to the word "on" is too restricted. Bearing in mind the rule already alluded to, by which the words in the deed must be taken most strongly against the grantor, it is entirely consonant with both reason and authority to accord to the words "on the land" the precise meaning claimed for them by the defendant and attributed to them by the trial court. The word "on" does not always or necessarily imply actual contact, and is not infrequently used to

318 FOREST V. L. CO. *v.* ATLANTIC, &c., R. CO., 120 VA. 308.

Opinion.

designate nearness in place or situation. Structures are often described as being on a street, or on a road, or on a stream, when in fact they do not physically touch the street, road or stream. This latitude in the use of the word is recognized in law. See 29 Cyc. 1484; *O'Mara* v. *Jensma,* 143 Iowa, 297, 121 N. W. 518, 519; *Burnam* v. *Banks,* 45 Mo. 349, 351; 6 Words & Phrases, p. 4963.

There is no error in the judgment complained of and it is affirmed.

*Affirmed.*