# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PAMPLIN V. NORFOLK AND WESTERN RAILWAY COMPANY.

January 16, 1919.

1. STREETS AND HIGHWAYS—*Change of Location of Public Road by Railroad—Damage to Landowner—Consent of Supervisors.*— The consent of a board of supervisors under sub-section 3 of section 1294-b, Code 1904, to a change of location of a public road by a railroad company, does not shield the railroad from liability for such damages, if any, as such change may cause to the owner or occupant of any lands.

2. RAILROADS—*Conveyance of Land for Right of Way—Injury to Other Property of Grantor by Construction of Railroad.*— Where land is conveyed to a railroad company as a right of way for its proposed railroad, the deed vests in the railroad company the same rights as though the land had been acquired for that purpose by condemnation. The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned. The grantor, therefore, cannot recover for any damages to the remainder of his land which result from a proper construction, use and operation of works upon the property conveyed.

3. RAILROADS—*Conveyance of Land for Right of Way—Injury to Other Property of Grantor by Construction of Railroad—Eminent Domain.*—The rule stated in the preceding syllabus covers all damages to the residue of the tract, where a part of a tract is taken by condemnation proceedings, or is conveyed, for a right of way for a railroad, which are due to the construction and operation of the railroad on a grade different from the natural surface of the land, because of the erection of an embankment on the right of way on such a part of the land which does not physically impinge upon or upheave the land adjacent to the right of way, or deprive it of lateral soil support, or violate the riparian or surface water rights of the owner thereof; unless the railroad company has limited itself to a particular grade or method of construction and operation, or the damages have been assessed, in the case of condemnation, or paid, in the case of a purchase and conveyance, upon the basis of such limitation. In the absence of such limitation,

all damages, past, present and future, to the residue of such real estate due to such construction and operation are presumed to have been included in the award of damages in a condemnation proceeding, and in the consideration paid therefor in case of a conveyance.

4. EMINENT DOMAIN—*Profile Filed With Petition—Damages to Adjoining Landowners.*—For a number of years there has been a general statute in Virginia which in condemnation proceedings requires all companies exercising the right of eminent domain to file with the petition a plat of the survey of the right of way proposed to be taken, with a profile showing the cuts and fills, etc., which enforces upon such companies a fixing of a limitation upon the grade line differing from that of the natural surface of the land to which they propose to construct their works and upon which they propose to operate their trains. Such limitation forms a basis for the assessment of damages by the commissioners in the condemnation proceeding, and such a company, if it afterward desires to change or adopt a substantially different grade, must obtain authority therefor, either by purchase or by further condemnation proceedings; otherwise, it will, in subsequent actions therefor, be liable for damages occasioned to property owners affected by such change of grade of the construction or operation thereon of its works.

5. EMINENT DOMAIN—*Profile Filed With Petition—Damages to Adjoining Landowners—Damage to Residue of Land.*—A railroad company, in the absence of such a statute as that mentioned in the preceding syllabus or of a similar requirement in its charter, at the time of the location and acquisition of the right of way, on a parcel of land which is a part of a larger tract, having acquired a right of way of a certain width by condemnation proceedings, is, as between it and the owner of the residue of such tract of land, and those in privity of estate with the latter, bound by no limitation upon the height to which it may construct its works thereon and operate the same, and change such height of construction and operation thereon of its trains from time to time, except such limitation as may arise from its duty to keep within the reasonable requirements of the discharge of its duties as a public service corporation and the further requirement of law that such construction and operation shall be done in a reasonably skillful and proper manner.

6. RAILROADS—*Conveyance for Right of Way—Damage to Residue of Property.*—There being no statute enforcing upon railroad companies a fixing of a limitation upon the construction and operation of its works prior to its purchase of a right of way, unless it voluntarily does so, a conveyance to it of land for its right of way will operate to confer upon it, as between it and

the grantor and those in privity of estate with the latter, the unlimited right of construction and operation of its works upon the land conveyed, at such height from the natural surface of the ground as its requirements and a reasonably skillful manner of construction and operation from time to time may dictate.

7. RAILROADS—*Conveyance of Right of Way—Damage to Residue of Property—Construction of Deed.*—In the instant case a deed to a railroad company of a tract of land, although in fee simple, was made directly to the railroad company as grantee, and in view also of what is stated in the deed on the subject of the line of railroad which was not then in existence, and of what is shown on the "Plan" made a part of the deed, it is impossible to escape the conclusion that it appears on the face of the deed that the conveyance was of a right of way for the proposed railroad of the grantee; especially in view also of the statute law of this State, which requires a railroad company to purchase the land for its right of way, if it can agree with its owner upon the price and terms therefor.

8. RAILROADS—*Right of Way—Construction of Deed—Fee Simple.*— That a conveyance is of the fee has no significance upon the question of whether it is a right of way for a railroad, since under our eminent domain statute the company obtains title to its right of way in fee by condemnation proceedings.

9. DEEDS—*Construction—Deed Drawn by Grantee.*—Where a deed to a railroad is drawn by the grantee or its agent, the rule is that "any doubt as to its true meaning should be solved adversely to the company." But this rule has to do merely with the meaning of ambiguous language in the deed, and cannot at all affect a rule of law applicable to the proper construction of a deed about the language of which there is no ambiguity.

10. RAILROADS—*Right of Way—Profile Filed With Deed—Knowledge of Grantor.*—To a deed of land to a railroad company prepared by the railroad a plan showing a profile of the proposed road was annexed and expressly made a part of the deed by the language of the deed itself.

*Held:* That the grantor was as much bound by and affected with constructive knowledge of what is shown on such "Plan" as she was with knowledge of any other contents of the deed.

11. RAILROADS—*Right of Way—Damage to Other Land of Landowner From Whom Acquired.*—The rule is well settled that while an award of damages in a condemnation proceeding to take a part of a tract of land will be presumed to include damages to the residue of that tract, due to the construction and operation on the part of the land taken, such award will not be presumed to include other damages to such residue of land due

to the construction and operation of the company's works on a different, or on part of a different tract of land not involved in such condemnation proceeding.

12. ACTIONS—*Damages—Satisfaction.*—Only one satisfaction can be demanded for the same damages, although they may be due to more than one contributing cause.

13. RAILROADS—*Right of Way—Damage to Other Land of Landowner From Whom Acquired.*—Where a landowner conveyed a strip of land over lot A to a railroad for a right of way, the grant did not release his right to damages due to the operation or construction of the road on lot B, and though little, if any, of the injuries complained of in the instant case as due to the construction and operation of the railroad company's works on lot B were different or in addition to those caused by the same character of construction and operation on the adjacent lot A, still this is a question for the jury under proper instructions and cannot be withdrawn from them.

14. RAILROADS—*Deed Granting Right of Way—Damage Due to Change of Grade.*—A deed by a landowner of a tract of land to a railroad for a right of way, does not operate as a release by the grantor of a claim of damage due to a change of grade by the railroad company, of a public road running along the south side of other land owned by the landowner.

15. EMINENT DOMAIN—*Award, Damages Including—Damages to Other Property of Landowner.*—A landowner owned a life interest in a tract of land, part of which was taken by a railroad company in eminent domain proceedings.

*Held:* That under subsection 23 of section 1105-f, Code of 1904, the award of damages in these proceedings did not bar the landowner's action for recovery of alleged damages to another tract of land owned by her in fee upon which her dwelling house was situated, by reason of the construction by the railroad company of its works on the land taken, and its subsequent operation of its trains thereon, and also by reason of the changing of the grade of a public road, it not appearing that the commissioners had considered and passed upon such damages to the landowner.

16. EMINENT DOMAIN PROCEEDINGS—*Damages—Report of Commissioners.*—It would be easy enough in all cases of condemnation for the commissioners to state in their report specifically what cases they in fact consider on the question of damages and the results of their action, whether in awarding or denying the award of damages, in each case considered, so that when any subsequent suit for damages is instituted the report may be turned to for evidence upon the question of whether such damages have or have not been considered and passed upon in the

33

condemnation proceeding. Such a procedure would be but fair alike to companies exercising the right of eminent domain and to property owners affected. And that the report of the commissioners should measure up to such requirements is the true intent and meaning of the eminent domain statute. Only by such a procedure can such companies be freed from the danger of being vexed with suits for damages which have been awarded and paid, and property owners be relieved from the danger of the effort being made to deprive them of their right to have their *bona fide* claims of damages in fact passed upon and adjudicated, so that such property right may not be taken away without due process of law by some constructive adjudication which never in truth occurred.

Error to a judgment of the Circuit Court of Appomattox county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

This is an action at law by the plaintiff in error (hereinafter called plaintiff) against the defendant in error (hereinafter called the railroad company) to recover damages alleged in the declaration to consist of the diminution of the market value and the impairment of the right of use and enjoyment of the occupation of certain land and the dwelling house thereon, due to the construction and operation of the railroad of the defendant railroad company and a change of grade in a county road by the railroad company, near the plaintiff's said property.

The land in question consists of the residue of a tract of eight or nine and a fraction acres (which we will designate the "Pamplin home tract"), belonging to the plaintiff, after deducting therefrom a parcel of one and a fourth acres which she conveyed to the defendant by deed dated June 2, 1915, which was acknowledged and delivered to the defendant on June 4, 1915. Such deed and the "Plan N3086" thereto attached and made a part thereof, as provided in the deed, are as follows:

"This deed, made this 2nd day of June, 1915, between Dora E. Pamplin (single), party of the first part, and Norfolk and Western Railway Company, party of the second part:

"Witnesseth: That for and in consideration of the sum of Three Thousand Dollars ($3,000.00) cash in hand paid, receipt of which is hereby acknowledged, the party of the first part doth bargain, sell, grant and convey unto the party of the second part all that certain piece or parcel of land situated in the county of Appomattox, State of Virginia, bounded and described as follows:

"Beginning *at a point on the center line of the Burkeville to Pamplin Low Grade connecting line of the Norfolk and Western Railway* at station 1949, said point of beginning being also in the dividing line between lands of Mrs. J. Y. Spencer and Miss Dora E. Pamplin; thence along said dividing line, between said lands, following the center of county road S. 16° 34′ E. about 168 feet to a point; thence along other lands of Miss Dora E. Pamplin, parallel to and 60 feet distant easterly from aforesaid center line in a northern direction about 562 feet to a point in the dividing line between the lands of Miss Dora E. Pamplin and Chas. Hindley, thence along the dividing line between said lands crossing aforesaid center line at station 1952 plus 64 S. 59° 23′ W. 186 feet to a point in the dividing line between the lands of Miss Dora E. Pamplin and Mrs. J. Y. Spencer, thence along said dividing line, between said lands, following the center of county road S. 16° 34′ E. about 3195 feet to the place of beginning, containing 1-4/10 acres, more or less, or *as more fully shown on Plan N*-3086 *Revised May* 22, 1915, *hereto attached and made a part of* this deed, it being a portion of the same property derived by the said Dora E. Pamplin under the will of Eliza T. Pamplin, dated July 14, 1891, and probated at the August term 1891 in Will Book No. 1, at page 5, to which will reference is here made for a further description of the property hereby conveyed.

"The party of the first part hereby covenants that she is seized in fee simple of the property described above and has the right to convey the same; that the property is unincumbered; that the grantee shall have quiet and peaceable possession of same, and that she will execute such other and further assurances of title as may be requisite.

"Witness the following signature and seal.

                "DORA E. PAMPLIN, (Seal).

(Italics supplied.)

This deed was acknowledged by the grantor before a notary on June 4, 1915, and that day delivered.to the railroad company.

It will be noted that the "Plan" shows a profile, on which it is shown that the railroad. will be constructed above the grade of the surface of the land conveyed by the deed.

The parcel of land thus conveyed to the defendant will be hereinafter referred to as lot "A," and the residue of the said "Pamplin home tract" as the "Dwelling House Land."

At the time of the execution and delivery of such deed a public road of the county, known as the Darlington Heights road, passed along the whole of the southwestern side of lot A (the southwestern boundary of such lot being the center of such road), and farther along directly in front of the said dwelling house of the plaintiff for some 138 to 150 feet to the intersection or junction therewith of another public road (the Pamplin-Charlotte C. H. road), coming from the east. The dwelling house land of the plaintiff lay to the north of and within the angle formed by the junction of those public roads, and the south side of such dwelling house land lay along the Pamplin-Charlotte C. H. road. At this time the grade of both of such roads was approximately on a level with the surface of lot A, and of the dwelling house land where such lot and land abutted on such roads.

Some time before the conveyance aforesaid to the railroad company, the plaintiff had conveyed to a nephew, Jack Spencer, an infant, in remainder after a life estate retained in herself, a parcel of some ...... acres of land, which will hereinafter be called the "Spencer tract," which lay immediately on the southwest side of the Darlington Heights road, its northeastern boundary being the center of such road, from the junction of the Pamplin-Charlotte C. H. road therewith, aforesaid, along the boundary line dividing it from the dwelling house tract and from lot A. It appears from the record that after making such conveyance the plaintiff forgot that she had retained a life estate in it and that Mrs. J. Y. Spencer, mother of said infant, became the tenant of the Spencer tract in right of her said son.

The plaintiff had lived for many years in the dwelling house aforesaid prior to and was living therein at the time of the institution of this action, but did not occupy or use the Spencer tract, as aforesaid, as must be inferred from the evidence for the railroad company in the record.

The railroad company, something over a month before said conveyance to it of lot A, when the situation of the title and the possession of the lot and of the dwelling house land and of the Spencer tract was, as aforesaid, proceeded under the statute contained in Acts of 1915 (extra session), p. 11, to locate and obtain the right of way for a connecting line between two points, Burkeville and Pamplin, on its existing main line for the more efficient and economical transportation of traffic between said two points, which the duty resting upon it as a public service corporation required it to transport. Such right of way as located by the railroad company took therefor said lot A and a portion of the Spencer tract.

On April 28, 1915, the railroad company, by ex parte proceedings under the statute, sub-section 3 of section 1294-b of Pollard's Code, 1904, obtained from the board of supervisors of the county of Appomattox, in which the same is located, their consent to a change of location of the Darlington Heights public road where it passed along in front of plaintiff's dwelling house land and bounded lot A, such change consisting in the abandonment of that location for such road and the relocation of it so as to extend it from the junction, or intersection of the Pamplin-Charlotte C. H. road therewith, aforesaid, thence almost due west, over the Spencer tract of land, across the proposed location of the right of way of the railroad company thereon, by an under-grade crossing, and thence, after reaching the western edge of the proposed right of way aforesaid on the Spencer Tract, proceeding along such edge of such right of way until it reached and passed into the former location of said Darlington Heights road where it passed the northwest corner of lot A, thence going in a northerly direction towards Pamplin.

The railroad company in this proceeding, filed before the board of supervisors plats and profiles showing such change

of location of the county road; the height of the embankment for its railroad which it proposed to construct at such under-grade crossing (which was some 15 feet in height at that point), and the height of such embankment which it proposed to construct thence along the right of way it proposed to acquire across the Spencer tract and across said lot A (such embankment being from about 15 to 8½ feet high from the natural surface of the ground, as it passed along in front of plaintiff's dwelling house). Such plats and profiles also showed that the grade of the Pamplin-Charlotte C. H. road, where the south side of the dwelling house land of plaintiff abutted on it, would be lowered about 2 to 4 or 5 feet where this road passed along, about 50 feet south of the said dwelling house, toward the under-grade crossing—being about 2 feet below the former grade and the grade of plaintiff's dwelling house land at a roadway which she had theretofore used as a driveway and side entrance from such Pamplin-Charlotte C. H. road into such land to the dwelling house, and reaching a depth of about 4 or 5 feet below the old county road where that road formerly passed about 50 feet from and in front of said dwelling house.

The railroad company, whether before or after the said proceeding before the board of supervisors does not appear from the record, reached an agreement with the plaintiff to purchase from her lot A, to be conveyed to it for the consideration of $3,000.00, which was some $2,625.00 in excess of the market value of such lot of land. This agreement was subsequently executed by the conveyance to the railroad company aforesaid.

The railroad company also reached an agreement with Mrs. Spencer (just when, does not appear from the record) for the purchase of the land necessary to be taken for the right of way of the railroad company for its line across the Spencer tract and for the damages to the residue of the Spen-

cer tract not so taken, the total consideration therefor being the sum of $1,500.00, Mrs. Spencer at the time supposing that her said son owned a fee simple estate in such land, and the railroad company, as it seems, not then being aware of the life estate of the plaintiff therein  Owing to the infancy of said son of Mrs. Spencer, the railroad company did not take a deed of conveyance of the part of the Spencer tract sought to be taken, as aforesaid, but on May 10, 1915, instituted a condemnation proceeding under the statute on that subject by notice "To Mrs. J. Y. Spencer and J. Y. Spencer, her husband, and to whom it may concern," which was served on Mrs. J. Y. Spencer and J. Y. Spencer on that day by the sheriff, which notice was to the effect that the railroad company would move the judge of the court below on May 29, 1915, for appointment of commissioners to ascertain what would be a just compensation for the portion of said Spencer tract proposed to be taken for the right of way aforesaid, setting forth the metes and bounds of such portion, and stating that "A plan showing the cuts and fills and a description of said property has been filed in the clerk's office of the circuit court of * *" (the court below) * * "in accordance with the statute in such cases made and provided." The railroad company accordingly on May 29, 1915, presented its petition under subsection 4, section 1105-f, of the eminent domain statute in 3 Pollard's Code, 1910, in which it set forth among other things, "that the owners of the property sought to be condemned are not able to give your petitioner a clear title to this property; * * * that there is filed herewith as 'Exhibit No. 1' which is prayed to be taken as a part of this petition, plat of the survey of the said tract or parcel of land with a profile showing the cuts and fills, trestles and bridges, if any, and a description of the land which is sought to be condemned; that there is also filed herewith a memorandum showing the names and residences of the

owners of said property as far as your petitioner has been able to ascertain the same; * *" The petition prayed for "the appointment of commissioners, as provided by law, to ascertain what will be a just compensation for the land proposed to be condemned for its uses and to award the damages, if any, resulting to the adjacent *or other property owners, or to the property of any other person beyond the peculiar benefits* that will accrue to such property, respectively, from the construction and operation of the company's works."

Then followed at the foot of the petition a description of the property sought to be taken as aforesaid, which is the same as in the notice aforesaid, and includes that portion of the Spencer tract which will be hereinafter designated as "lot B."

The memorandum mentioned in said petition was as follows:

"The names and addresses, as far as your petitioner is able to ascertain, of the parties interested in the property sought to be acquired in the foregoing proceedings are as follows:

"Mrs. J. Y. Spencer, Lynchburg, Va.

"Mr. J. Y. Spencer, Lynchburg, Va."

On May 29, 1915, proceeding under subsection 6 of said section 1105-f in 3 Pollard's Code, 1910, an order was entered by the judge of the said court below, which recited, among other things, that, "It appearing to the court that notice has been given by the Norfolk and Western Railway Company to Mrs. J. Y. Spencer and J. Y. Spencer, her husband, that it would on this 29th day of May apply to this court for the appointment of commissioners for the purpose of ascertaining a just compensation for the real estate described in said notice and to award damages, if any, resulting to the adjacent *or other property of the owners or others* beyond the peculiar benefits that will accrue to any such

properties, respectively, from the construction and opera-
tion of the company's works; * * * that said notice has been
duly published once a week for two consecutive weeks in
the Times-Virginian, a paper published in this county, and
that the same was posted at the front door of the court
house of this county on the first day of the rules next pre-
ceding this application, and that all the requirements of
law preliminary to this application have been duly com-
plied with." Such order appointed commissioners "for the
purpose of ascertaining a just compensation for such lands
and awarding the damages, if any, resulting to the adjacent
*or other property of the owners or to the property of any
person,* beyond the peculiar benefits that will accrue to such
properties, *respectively,* from the construction and opera-
tion of the company's works * * *"

The report of the commissioners, under subsection 9 of
said section 1105-f in 3 Pollard's Code, 1910, of their ac-
tion under subsection 8 of said section 1105-f, Pollard's
Code, 1904, so far as material, set forth, that they were ap-
pointed by said court; and the purposes of their appoint-
ment, viz: "to ascertain what will be a just compensation
for such part of the land of the freehold whereof Mrs. J.
Y. Spencer *et al* are tenants and *for such other property
as is proposed to be taken* by the Norfolk and Western Rail-
way Company, and to assess the damages, if any, resulting
to the adjacent or other property of said tenants or owners
*or to the property of any other person,* beyond * *" etc.,
as per said order of appointment; that they met, on the day
fixed upon in said order, on the part of said Spencer tract
proposed to be taken as aforesaid, setting forth its metes
and bounds aforesaid, (being lot B aforesaid) and the fact
that they were duly sworn, and reported their action as
follows: "* * * upon a view of the part aforesaid and of
the adjacent and other property of said owners *and of the
property of other persons who will be damaged in their*

*property by the construction and operation of the works of
said company;* and upon such evidence as was before us,
we are of opinion, and do ascertain, that for the said part
*and for the other property so taken* $1,350.00 will be a just
compensation, and the damages to the adjacent *and other
property of said tenants or owners and to the property of
other persons,* who will be damaged in their property by
reason of the construction and operation of the works of
said company, beyond the peculiar benefits that will accrue
to such properties, respectively, from the construction and
operation of such works are $150.00." (The italics in the
above quotations are supplied.)

This report was dated June 3, 1915. The plats and pro-
files filed by the railroad company with such proceeding
showed the height above the surface of the ground of the
embankment it proposed to construct for its line of railroad
along the right of way aforesaid in front of the dwelling
house of the plaintiff on the Spencer tract and the proposed
under-grade crossing and the lowering of the grade of the
Pamplin-Charlotte C. H. road as it passed along the side
of plaintiff's dwelling house land as aforesaid.

After the commissioner's report aforesaid was filed, to-
wit, on June 22, 1915, an order of said judge was entered
in vacation appointing a commissioner to enquire and re-
port, among other things, what persons were entitled to the
said sum of $1,500.00 and in what proportions. Such com-
missioner issued a notice to the plaintiff and to Mrs. J.
Y. Spencer, J. Y. Spencer, her husband, and Jack Spencer,
of the pendency of such proceeding before him under such
order. Legal service of such notice was accepted by Mr.
Franklin, an attorney at law, as attorney for "all the de-
fendants" in such proceeding. The commissioners reported,
in substance, that the plaintiff owned a life estate in the
said Spencer tract of land, and the commuted value of it
and that Jack Spencer was the owner in fee of such land
in remainder after the life estate therein of the plaintiff.

Some time in July, 1915, as it would seem from the contents thereof (the precise date not appearing from the record), an order was entered by said judge of the court below in said Spencer land condemnation proceeding under said subsection 9 of section 1105-f, 3 of Pollard's Code, 1910, reciting among other things, that the railroad company had paid into court the $1,500 aforesaid, and the order ratified, confirmed and approved the proceedings and reports of the commissioners in all respects, directed the report to be recorded as provided by law, and dismissed the proceedings from the docket, with provision that the court, however, retained "jurisdiction to direct the distribution of said fund according to law."

By order entered October, 1915, the said judge, after directing the payment of certain costs and expenses, decreed that $747.73 of said $1,500 be paid to the plaintiff as the present value of her life estate in such sum of money, which was accordingly paid over to Mr. Franklin, as her attorney, and by him subsequently paid over to her.

It appears from Mr. Franklin's testimony in the record that he was present at the meeting of the commissioners above mentioned on June 3, 1915, in the Spencer land condemnation proceeding, and that he then represented the plaintiff as her attorney at law, not at her request, but, as he testifies, because the plaintiff had consulted him "time and again and perhaps nearly every time she has any trouble, for that matter," and that he wrote the deed from plaintiff conveying the Spencer tract of land, as aforesaid, to Jack Spencer, and "knew that there was a reservation of a life estate in that deed," and, as such witness, further testified: "So, when I appeared there * * * I was representing Miss Dora" (the plaintiff) "because I knew that Miss Dora did not know and Mrs. Spencer did not seem to know, and I don't reckon she did, that she had a life estate in it, so the commissioners just went through and adopted

what you all, you" (addressing counsel for the railroad
company) "and Mrs. Spencer had already agreed on, $1,-
500.00." This witness, also, testified that no question was
considered by the commissioners in arriving at the $1,500
damages which they reported, as aforesaid, in the Spencer
land condemnation proceeding "with reference to anything
except the damage to that particular piece of land of Jack
Spencer's, and you had agreed upon that beforehand."

The following diagram will show the respective locations
above mentioned:

After the deed aforesaid from the plaintiff to the rail-
road company was delivered and the report of the commis-
sioners in the Spencer land-condemnation proceedings had
been confirmed, as above stated, the railroad company com-
menced the construction of the works aforesaid and sub-
sequently completed same, all in accordance with its plans
and profiles aforesaid filed before the board of supervisors,
in the Spencer land-condemnation proceedings, and with
the profile shown on the "plan" recorded with the deed
from the plaintiff to the railroad company aforesaid.

The plaintiff was not examined as a witness in the case,

and there is no evidence in this record that she had any actual knowledge as to what the construction of the works of the plaintiff on lot A, or lot B, or the operation of its tracks thereon, would be, or that there would be a change of location of the Darlington Heights road, or a change of grade of the Pamplin-Charlotte C. H. road, until the construction work was in progress; nor any constructive knowledge of any of these things, except that given her by the profile on the "plan" with said deed.

After the completion of said works and the operation for some time of trains of the railroad company over its said newly constructed line, the plaintiff, in October, 1916, instituted this action.

There is an original and amended declaration in the case, and the damages aforesaid sought to be recovered by the allegations thereof are for certain alleged injuries due to certain alleged causes, namely:

1. To the construction by the railroad company, on lot A, of the embankment aforesaid for its railroad line, and the operation of its trains thereon.

This is alleged, in substance, to have occasioned the following injuries: (a) The depriving of the plaintiff of the front entrance to her dwelling and dwelling-house land from the Darlington Heights public road, formerly passing such front, as above noted; (b) the expense to which she has been put in making alterations and repairs to such front entrance; (c) the destruction of the privacy of plaintiff's home; (d) the trash, dust and dirt finding easy access into said dwelling; (e) the water to be collected and retained upon the dwelling-house land and to soak, percolate and flow through and into the whole of it and into and under the dwelling house, causing such house to become and be permanently damp and wet; (f) detraction from the appearance of the dwelling house and dwelling-house land; and (g) a nuisance, resulting from the jarring of

the ground, shaking the dwelling house, and the noise, smoke and dust emitted by passing trains on said embankment, whereby the walls, windows and doors of the dwelling have been cracked, displaced and broken and the air in and about the plaintiff's said premises has been so polluted as to sensibly impair the enjoyment thereof and the ordinary comfort of human existence therein being otherwise materially interfered with.

The first count of the original declaration alleges also the additional injuries of the deprivation of the plaintiff of the use of her front yard and front porch, due to the same cause above mentioned.

2. The construction by the railroad company of the embankment aforesaid for its railroad on lot B, and the operation by it of its trains thereon.

This is alleged to have caused substantially the same injuries as are alleged to have been caused by the construction of and operation of trains on the embankment on lot A, as aforesaid, except that the additional injuries alleged, as aforesaid, in the first count of the original declaration, are not alleged as to the construction and operation on lot B.

3. The change by the railroad company of the grade of the Pamplin-Charlotte C. H. public road above mentioned, along the south side of the dwelling-house land.

This is alleged to have destroyed "the only road or way to and from the said property of the plaintiff" (being the side-driveway entrance above mentioned to the dwelling-house land and dwelling), whereby the plaintiff "was unavoidably and of necessity put to great expense in and about making and causing to be made alterations and repairs to her said property."

There was the following special plea filed by the railroad company, and other pleadings not material to be mentioned specifically:

"Special plea No. 2.—And the defendant also says that during the construction of the line known as the Burke-ville-Pamplin low-grade line, it became necessary that it should cross the county highway in front of plaintiff's property, as shown on exhibit No. 1, which is here again referred to, and that, in order to do this, certain altera-tions in the public highway adjoining plaintiff's property became necessary in order to construct an under-grade cross-ing; that the changes and alterations in said highway were made with the consent of the board of supervisors; that by said alterations an under-grade crossing was constructed by the defendant at great expense instead of a grade cross-ing, which would otherwise have been necessary; and that such undergrade crossing is greatly to the safety and con-venience of the public, and that if plaintiff suffered any inconvenience by such construction and change in said high-ways that it resulted through a legal and proper change made by or with the consent of the proper authorities hav-ing charge of such matters, and for which the defendant is not liable.

"And this the defendant is ready to verify."

Thereupon, there was a trial by jury.

Further reference to the evidence and absence of evi-dence on certain points will be found in the opinion below.

The following instructions were given to the jury over the objection of the plaintiff:

"A.    The court instructs the jury that all the elements of damage claimed by the plaintiff in her evidence in this case could be recovered in the condemnation proceedings under the statute of the State of Virginia, and as it is shown by the plaintiff that she appeared by counsel, in the condemnation proceedings of the lot conveyed by her to Jack Spencer, and subsequently received her proper pro-portion of the damages allowed therein, the jury must find a verdict for the defendant.

"B.   The court further instructs the jury that when the plaintiff conveyed to defendant the strip of land described in the deed to the Norfolk and Western Railway Company, the ownership of said property was vested in defendant, and that it was permitted to use the same for the purpose of the reconstruction of its railroad.

"C.   The court further instructs the jury that in so far as the plaintiff claims to have been damaged by the construction of the under-grade crossing, and the vacation of a portion of the old county road that ran in front of her premises, the law vests in the board of county commissioners authority to authorize railway companies to alter public highways whenever in their judgment an equally convenient road shall have been provided by the railway company seeking to cross the said highway, and that if the jury believe from the evidence the plans for said under-grade crossing were submitted to the county commissioners and approved by them, then the defendant was permitted under the law to proceed with said construction, and it is not liable for the damages thereby occasioned, especially in view of the deed and condemnation proceedings above mentioned."

There was a verdict and judgment for the railroad company, and the plaintiff brings error.

*A. S. Hester,* for the plaintiff in error.

*F. S. Kirkpatrick* and *Theodore W. Reath,* for the defendant in error.

Sims, J., after making the above statement, delivered the following opinion of the court:

The assignments of error present the questions for decision which will be passed upon in their order, as stated below:

35

[1] 1. Does the consent of a board of supervisors, under subsection 3 of section 1294-b (1 Pollard's Code, 1904), to a change of location of a public road by a railroad company shield the latter from liability for such damages, if any, as such change may cause to the owner or occupant of any lands?

This question must be answered in the negative. Such statute expressly provides that the company exercising such privileges "shall make proper compensation for such damage."

Indeed, we do not understand that the railroad company disputes the correctness of the conclusion just stated, although its plea No. 2 (quoted in the above statement), filed in the case by leave of court over the objection of the plain-tiff, raised such question in the trial court, and one of the assignments of error presents it to us for decision.

The positions of the railroad company before us on this subject are, in substance, that while the plaintiff, as an original proposition, was entitled to demand and receive of it just compensation for such damages, that compensation therefor was in fact included (along with compensation for many other claims of damages) in the consideration which the railroad company paid the plaintiff for her deed to it (quoted in the above statement), and that such deed will be construed to have released all claim of the plaintiff for such damages; or that if this be not so, that such damages were either included in the $150 item of award of damages made by the commissioners in the Spencer land condemnation proceeding (set forth in the above statement), or that such award operated as an estoppel against any subsequent claim for such damages, and that all claims of the plaintiff therefor are barred by such proceeding by reason of the eminent domain statute law on the subject, hereinbelow more specifically set forth.

These positions will be hereinafter dealt with.

[2] 2. Did the deed above mentioned, when properly construed, operate as a release by the plaintiff of the claims of damages made in her original and amended declaration in this case, which were due to the construction of the railroad company, on lot A, of the embankment for its railroad and the operation of its trains thereon?

This question must be answered in the affirmative.

A summarized statement of such claims of damages will appear from the statement preceding this opinion.

It is well settled that if it be a fact that the land conveyed by the deed under consideration (which is shown on the diagram above as "lot A") was conveyed to the railroad company as a right of way for its proposed railroad, the deed vested in the railroad company the same rights as though lot A had been acquired for that purpose by condemnation.

"The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned. The grantor, therefore, cannot recover for any damages to the remainder of his land which result from a proper construction, use and operation of works upon the property conveyed." 2 Lewis on Em. Dom. (3d ed.), sec. 474, citing numerous authorities; *Cassidy* v. *Old Colony R. R.*, 141 Mass. 174, 5 N. E. 142; *Roushlange* v. *Chicago, etc., R. Co.*, 115 Ind. 106, 17 N. E. 198; *Hortsman* v. *Covington, etc., R. Co.*, 18 B. Mon. (Ky.) 219.

[3] This rule covers all damages to the residue of the tract where a part of a tract is taken by condemnation proceedings, or is conveyed, for a right of way for a railroad, which are due to the construction and operation of the railroad on a grade different from the natural surface of the land, because of the erection of an embankment on the right of way on such part of the land which does not physically impinge upon or upheave the land adjacent to the right of

way, or deprive it of lateral soil support, or violate the
riparian or surface-water rights of the owner thereof; un-
less the railroad company has limited itself to a particu-
lar grade or method of construction and operation, or
the damages have been assessed, in the case of condemna-
tion, or paid, in the case of a purchase and conveyance,
upon the basis of such limitation. In the absence of such
limitation, all damages past, present and future to the res-
idue of such real estate due to such construction and oper-
ation are presumed to have been included in the award of
damages in a condemnation proceeding, and in the consid-
eration paid therefor in case of a conveyance. 2 Lewis on
Em. Dom., sec. 712-714, 821, 830, 110-114, 818, 820, 824;
*Cassidy* v. *Old Colony R. Co.,* 141 Mass. 174, 5 N. E. 142;
*Brainard* v. *Clapp,* 10 Cush. (Mass.) 6, 57 Am. Dec. 74, in
which the opinion of the court was delivered by Chief Jus-
tice Shaw; *Tinker* v. *City of Rockford,* 137 Ill. 123, 28 N.
E. 573; *Costigan* v. *Penn. R. Co.,* 54 N. J. L. 233, 23 Atl.
810. The case of *Fisher* v. *Seaboard Air Line Ry.,* 102 Va.
363, 46 S. E. 381, 1 Ann. Cas. 622, rests upon the same pre-
sumption.

[4] It is true that for a number of years there has been a
general statute in Virginia which, in condemnation pro-
ceedings, requires all companies exercising the right of
eminent domain to file with the petition a plat of the survey
of the right of way proposed to be taken, with a profile
showing the cuts and fills, etc., which enforces upon such
companies a fixing of a limitation upon the grade line dif-
fering from that of the natural surface of the land to which
they propose to construct their works and upon which
they propose to operate their trains. Such limitation forms
a basis for the assessment of damages by the commission-
ers in the condemnation proceeding, and such a company, if
it afterward desires to change or adopt a substantially dif-
ferent grade, must obtain authority therefor, either by pur-

chase or by further condemnation proceedings; otherwise, it will, in subsequent action therefor, be liable for damages occasioned to property owners affected by such change of grade of the construction or operation thereon of its works.

[5] A railroad company, in the absence of such statute or of a similar requirement in its charter, at the time of the location and acquisition of the right of way, on a parcel of land which is a part of a larger tract, having acquired a right of way of a certain width by condemnation proceedings, is, as between it and the owner of the residue of such tract of land, and those in privity of estate with the latter, bound by no limitation upon the height to which it may construct its works thereon and operate the same, and change such height of construction and operation thereon of its trains from time to time, except such limitation as may arise from its duty to keep within the reasonable requirements of the discharge of its duties as a public service corporation and the further requirement of law that such construction and operation shall be done in a reasonably skillful and proper manner.

[6] There being no statute enforcing upon railroad companies a fixing of a limitation upon the construction and operation of its works prior to its purchase of a right of way, unless it voluntarily does so, a conveyance to it of land for its right of way will operate to confer upon it, as between it and the grantor and those in privity of estate with the latter, as aforesaid, the unlimited right of construction and operation of its works upon the land conveyed, at such height from the natural surface of the ground as its requirements aforesaid and reasonably skillful manner of construction and operation from time to time may dictate.

Some of the decisions hold, as indicated above, but not without conflict of authority, that, notwithstanding a condemnation or conveyance of a right of way for a railroad company, unlimited as to the right of construction of the

railroad thereon at any grade at variance with the natural surface of the ground, there is nevertheless a limitation imposed upon the railroad company's right of construction of its works in certain particulars, which is the same as that upon the rights of ordinary proprietors of land, namely, that the railroad company cannot, any more than an ordinary owner of land, by construction of works upon its right of way, do any actionable injury to an adjacent landowner by depriving the soil of the adjacent land of support, or by interfering with the flow of running streams thereon, or with the surface-water rights of the adjacent landowner, without liability to him for damages, in addition to those awarded in the condemnation proceedings, or covered by a consideration for a conveyance. See 2 Lewis on Em. Dom., *supra,* especially secs. 110-114, 818, 820, 824, 826. But since there is no allegation in the pleadings of the plaintiff in the instant case of any injuries caused by deprivation of lateral soil support to her land adjacent to the right of way of the railroad company, nor of interference with any riparian water rights in any flowing stream thereon; and since there is no proof in the case of any violation of surface-water rights, although there is, as noted in the above statement of the case, an allegation in the declaration of the violation of the latter rights of the plaintiff on her adjacent land, we are relieved of the duty of entering upon any consideration of the precise limits of such rights as are mentioned in this paragraph, or of how far they may furnish exceptions to the rule we have under consideration as to the effect of a deed to a railroad company conveying to it a right of way for its railroad.

But the plaintiff contends that it cannot be said that the deed in the instant case was for a right of way for the railroad company, that it is but an ordinary conveyance to it as the grantee of land in fee, with a description of the boundaries thereof, and conferred no other rights upon the rail-

road company with respect to the use thereof than any individual grantee has, namely, to hold and use the land subject to the law applicable to adjoining proprietors of land and of the maxim *sic utere tuo ut alienum non laedas,* and the following authorities are cited to sustain such position, viz: *Pettit* v. *Jamestown, etc., R. Co.,* 222 Pa. 490, 71 Atl. 1048, 21 L. R. A. (N. S.) 322-3; Lewis on Em. Dom., *supra* (sec. 820) ; *Beaty* v. *Baltimore & Ohio R. R. Co.,* 6 W. Va. 391.

In the *Pettit Case* cited, the deed was to an individual as "trustee," not stating for whom the grantee was "trustee," so that it did not appear on the face of the deed that the conveyance was to a railroad company. Further, in that case, the injury in question consisted of the removal of the lateral support of the soil of plaintiff's land by work done by defendant on its adjacent right of way conveyed by the deed, as to which subject an exceptional rule applies in some jurisdictions, as above noted. Lateral soil support and interference with riparian rights in running streams of water and with surface-water rights of an adjoining landowner; as furnishing exceptions to the general rule applicable to the effect of the award of damages in a condemnation proceeding, and to the construction of deeds of conveyance of land for the right of way aforesaid, are above considered, and is the subject of what is said in section 820 of Lewis on Eminent Domain, cited. In *Beaty* v. *B. & O. R. R. Co.,* cited, the injury and resultant damage complained of concerned the water rights of the plaintiff, and was caused by the failure of the railroad company to make or provide a sufficient drain to carry off the water through an embankment built on its right of way. As above noted, an exceptional rule obtains in some jurisdictions on that subject, and there are considerations as to when such exceptional rule is operative, or as to whether a given case does or does not fall within such exception, which

are immaterial to the instant case and need not be entered into here. However, in that case itself, the deed conveyed a parcel of land in fee simple without any condition, merely referring to the proposed line of railroad in the designation of the boundaries of the land conveyed (as does the deed in the instant case, if the profile therewith be left out of view) ; and the court, in its opinion, said: "Although no purpose is expressed in the deed, the company acquired this land, it may well be inferred, for the purpose of constructing its road upon it."

[7] So, in the instant case, in view of the fact that the deed is made directly to the railroad company as grantee, in view also of what is stated in the deed on the subject of the line of railroad which was not then in existence, and of what is shown on the "plan" made a part of the deed (which "plan" appears in the statement preceding this opinion), even if we left out of consideration the profile shown on such "plan" which evidenced that the railroad would be constructed on the land conveyed on an embankment, as it was afterwards constructed, we cannot escape the conclusion that it appears on the face of the deed that the conveyance was of a right of way for the proposed railroad of the grantee; especially in view also of the statute law of this State, which requires a railroad company to purchase the land for its right of way, if it can agree with its owner upon the price and terms therefor (which includes damages to the residue of the land of the owner where only a part of a tract is taken for the right of way), and does not allow the railroad company to proceed by condemnation proceeding, unless it cannot so agree with such owner, or unless title to such land cannot be obtained by conveyance from the owner.

[8] That a conveyance is of the fee has no significance upon the question of whether it is a right of way for a railroad, since under our eminent domain statute the company

obtains title to its right of way in fee by condemnation proceedings.

The general rule applicable to the change of grade of streets, namely, that damages occasioned by such change are not in general presumed to have been included in a prior condemnation proceeding, or to have been released by a prior conveyance of a right of way for a street, is urged upon us for plaintiff as in conflict with the view of the law which we have above taken. The case of *Harman* v. *City of Bluefield*, 70 W. Va. 129, 73 S. E. 297, is cited and especially relied on for plaintiff upon this point. An examination of such case and of other authorities on this subject (see 2 Lewis on Em. Dom., secs. 712-714, 825, and authorities there cited) discloses that where no limitation is placed upon the grade of the street prior to or at the time of the condemnation of the right of way therefor, by plans establishing a grade line or otherwise, damages will be awarded in the condemnation proceeding, once for all, to cover the right of the municipality to establish any grade it may see fit. And the general rule adverted to in the beginning of this paragraph obtains only where a prior limitation has been placed upon the grade of the street, either by a formal establishment of grade lines, or by the use of a road or street way of a certain grade, which it was not contemplated at the time of such use would ever be changed. Hence, such general rule cannot be regarded as at all in conflict with the view which we have above taken of the law.

[9] It should also be noted that it is urged upon our consideration for plaintiff that the deed in the instant case was drawn by the grantee, or its agents, and that the rule as to such a deed is that "any doubt as to its true meaning should be solved adversely to the company," citing *Lockwood* v. *Ohio R. R. Co.*, 103 Fed. 243, 43 C. C. A. 202. Such rule as applied in that case, however, had to do merely with

36

the meaning of ambiguous language in the deed, and cannot at all affect a rule of law applicable to the proper construction of a deed about the language of which there is no ambiguity. Hence, we think there is no merit in such position.

[10] The foregoing has proceeded upon the idea that the profile shown on the "plan" which is a part of the deed in the instant case, conveyed no meaning to the plaintiff, which is the position taken for the plaintiff in the case. We cannot concur in this view, however. We think that the plaintiff is as much bound by and affected with constructive knowledge of what is shown on such "plan" as she is with knowledge of any other contents of the deed. The "plan" aforesaid is expressly made a part of the deed by the language of the deed itself. This being so, the conclusion above reached, as to the release of damages which the law will imply from the execution and delivery of said deed, is strengthened.

Coming now to the application of the above conclusions of law to the injuries complained of by the plaintiff in the instant case, as due to the construction by the railroad company of the embankment on lot A, and the operation of its trains thereon (which are set forth in detail in the above statement of the case), and resultant damages sought to be recovered in the instant case therefor, we are of opinion that the deed aforesaid operated as a release of all of such claims of damages of which there is any evidence whatever in the record. We will here mention these matters and our conclusions thereon *seriatim:*

(a) The embankment constructed on lot A occupied the old location of the Darlington Heights road to its center, and its construction, so as to be used as a part of the railroad, necessarily obstructed the whole of that road, and that deprived the plaintiff of the front entrance to her dwelling and dwelling-house land from such road.

(b) Any expense to which the plaintiff has been (or may be) put in making alterations and repairs to such front entrance has the same cause.

(c) The destruction of the privacy of the plaintiff's home has the same cause.

The same is true of:

(d) The trash, dust and dirt finding easy access into said dwelling; of (f) the detraction from the appearance of the dwelling house and dwelling-house land; and of (g) the nuisance, resulting from the jarring of the ground, shaking the dwelling house and the noise, smoke and dust emitted by passing trains on said embankment, whereby the walls, windows, and doors of the dwelling are alleged to have been cracked, displaced and broken and the air in and about the said premises has been so polluted as to sensibly impair the enjoyment thereof and the ordinary comfort of human existence therein, etc., as alleged—so far as there is any evidence in the case tending to show such injuries, or any of them.

As above noted, there is no evidence in the case tending to prove the allegation mentioned above under the heading (e), with respect to the collection of water and its retention upon the dwelling-house land, causing it to soak, percolate and flow through and into the whole of such land and into and under the dwelling house, causing to become and be permanently damp and wet, hence, no further mention need be made of that matter.

As to the allegations of the first count of the original declaration of the additional injuries of the deprivation of the plaintiff of the use of her front yard and front porch:

There is no evidence in the case of any deprivation of use of the front yard or porch. The only evidence of deprivation of use of any entrance to the front of the dwelling-house land (except that afforded by the old location of the Darlington Heights road, which was obstructed and neces-

sarily made impassible by the construction of the embankment on lot A and its use as a part of the line of railroad constructed thereon, as aforesaid, is to the effect that a front driveway was obstructed, which entered the dwelling-house land from the Darlington Heights road by a gate located on the north side of the front yard (which gate was on the east-ern line of lot A) ; but that was obstructed, and necessarily so, by the embankment constructed on lot A.

[11] 3. Did the deed above mentioned operate as a release by the plaintiff of her claims of damages which were not due to the construction by the railroad company on lot A of the embankment for its railroad, or to the operation of its trains thereover; but were due to the construction or operation of the works of the railroad company on lot B, of the embankment, undergrade crossing, etc., mentioned in and shown on the diagram with the statement preceding this opinion?

This question must be answered in the negative.

The rule is well settled that while an award of damages in a condemnation proceeding to take a part of a tract of land will be presumed to include damages to the residue of that tract, due to the construction and operation on the part of the land taken, as above stated, such award will not be presumed to include other damages to such residue of land due to the construction and operation of the company's works on a different, or on part of a different tract of land not involved in such condemnation proceeding. And the same rule applies to deeds of conveyance of a right of way for a railroad. Lewis on Em. Dom., sec. 822; *Alabama, etc., R. Co.* v. *Williams,* 92 Ala. 277, 9 So. 203; *Tinker* v. *City of Rockford, supra* (137 Ill. 123, 28 N. E. 573) ; *Eaton* v. *B. C., etc., R. Co.,* 51 N. H. 504, 12 Am. Rep. 147; *Delaware, etc., Canal Co.* v. *Lee,* 22 N. J. Law, 243; *St. Louis, etc., R. Co.* v. *Harris,* 47 Ark. 340, 1 S. W. 609.

On this subject Lewis on Em. Domain says, in section 822, cited: "* * * If parts of black acre and white acre

are taken, and if the works as constructed upon black acre produce damage to white acre, then there is no presumption that these were included in the assessment to the proprietor of white acre, and he may recover therefor as though no land of his had been taken for the work." (Citing numerous cases.) The same section of this work also states that, "* * * when parts of certain lots were taken for a railroad and damages assessed therefor, and the parts not taken were damaged by the railroad crossing and obstructing a street upon which the lots abutted at some distance from the lots, it was held that the latter damages were not included in the assessment and that an action would lie to recover the same. * * * Many of the cases which have been cited are where the plaintiff had conveyed or released the part appropriated, but the effect of a conveyance or release as to future damages is the same as a condemnation."

It is said on this subject in the opinion of the court in the case of *Tinker* v. *City of Rockford, supra* (137 Ill. 123, 28 N. E. 573), that the principle involved is "that the deed of land for right of way of a railroad company has the same effect, as between the parties, that a condemnation under the law of eminent domain for that purpose would have. But it must be obvious that this principle can have no application to anything not included within the grant— as, for instance, damages caused by acts of the railroad company upon other lands than those to which the grant relates—for as between the grant and damages resulting from such acts, it is impossible that there can be the relation of cause and effect."

The case of *Forest View Land Co.* v. *Atlantic Coast Line R. Co.*, 120 Va. 308, 91 S. E. 198, is relied on for the railroad company as establishing a different rule in this State. In that case the deed involved contained an express release of claims for damages, which was the same in its

terms as the release of damages implied by law in a deed to a railroad company for a right of way where the deed is silent on the subject of such release. The landowner in that case did not contest the effect of the release upon any ground in conflict with the views above expressed, but contended that the works of the railroad company were not in fact constructed *on the land conveyed.* We rejected this contention and held that the works of the railroad company were on the land conveyed, within the meaning of the language of the release, when construed in the light of all the facts and circumstances in the case, including particularly the knowledge with which the grantors in the deed were charged as to the unified and entire plan of the company. It follows, therefore, that the Forest View Land Co. case is not controlling as authority in the case now before us.

[12, 13] Of course, the rule last mentioned must be reasonably applied. If the acts of the railroad company done on lot B were inseparably attendant upon those done on lot A, and have not caused any additional injuries to the dwelling-house land or dwelling thereon, than have been caused by the acts of the railroad company on lot A, then, manifestly, the claim that such injuries were in part caused by acts of the railroad company on lot B would not avail the plaintiff to obviate the aforesaid bar of the deed. Only one satisfaction can be demanded for the same damages, although they may be due to more than one contributing cause. However, the deed does not bar the plaintiff's right to recover damages, due to the acts of the railroad company on lot B, which are additional to or are different from the damages due to the acts of the railroad company on lot A.

It may be true that little, if any, of the injuries complained of in the instant case as due to the construction and operation of the railroad company's works on lot B were

different or in addition to those caused by the same character of construction and operation on the adjacent lot A. But this is a question for the jury under proper instructions and cannot be properly decided by us. Such question was not submitted to the jury in the court below, but was withdrawn from the jury as a result of the instructions given as aforesaid.

[14] 4. Did the deed above mentioned operate as a release by the plaintiff of the claim of damages due to the change of grade by the railroad company of the Pamplin-Charlotte C. H. public road, above mentioned, along the south side of the dwelling-house land?

The injury and resulting damage which such change of grade is alleged to have occasioned is set out in the above statement of the case.

Such act of the railroad company was not done on the land granted by the deed, but upon other land, and the injury alleged was different from any of those alleged to have been occasioned by the acts of the railroad company upon the land granted. Hence, for the reasons stated and upon the authorities cited in the consideration of the third question above, we are of opinion that this fourth question, now under consideration, must be answered in the negative.

[15] 5. Did the Spencer land condemnation proceedings set forth in the statement preceding this opinion operate as an estoppel of or bar the plaintiff's action in the instant case for the recovery of the alleged damages to her dwelling-house land and dwelling thereon alleged to have been occasioned by reason of the construction by the railroad company of its works on the embankment, under-grade crossing, etc., on lot B, and its subsequent operation of its trains thereon, and by reason also of the changing of the grade of the Pamplin-Charlotte C. H. public road, as also set forth in the said statement?

This question will be decided by the determination of

whether the statute hereinafter quoted purports to bar the plaintiff's action in the instant case. We shall, therefore, confine our consideration of the subject in hand to that question.

The railroad company relies on the statute contained in subsection 23 of section 1105-f (the eminent domain statute, 1 Pollard's Code, 1904), as a bar to the plaintiff's action for the damages now in question, which, so far as material, is as follows:

*"Who may be a party to the proceedings; when right of action will abate.*

"(23) Any person * * * who claims that he will 'be damaged in his property by reason of the location, construction * * * of the line * * * maintenance, or proper and reasonable operation of any works in this act mentioned * * * for public use, may appear before the commissioners appointed as in this act provided, at the time and place provided for their meeting, make himself a party to the proceedings and have his rights passed upon by the commissioners, and his damages, if any, ascertained, allowed and paid as in this act hereinbefore provided for the taking of land, material, water or other things. But after the notice required by this act, and the judgment of the court upon the report of the commissioners, and the payment to the *persons therein named,* or into court, for *their* use, of the sum or sums of money ascertained by such report, no action shall be brought by any person, *whether he appeared or not,* to recover compensation for * * * damages *considered and passed upon by the commissioners,* resulting * * * from the location, construction * * * of the line or * * * maintenance or proper and reasonable operation of any such works." (Italics supplied.)

We are of opinion that under such statute the plaintiff might have appeared in the Spencer land condemnation proceeding and have had her right to the damages now

under consideration "passed upon by the commissioners" acting therein. But the test of whether the plaintiff is or is not estopped, or is or is not barred from maintaining a subsequent action for the damages we have under consideration, is not the application of the doctrine of *res adjudicata,* but a test prescribed by the statute just quoted. Under that statute the question is not one of estoppel, but one of whether the action is or is not barred. And the test of the latter is the same, as we shall presently point out in more detail, whether the plaintiff "appeared or not" in such condemnation proceeding. It becomes unnecessary, therefore, to consider the questions raised in the record as to whether the plaintiff, by the appearance of her attorney before the commissioners, became then a party to the proceeding, or as to what was the effect upon her said rights of being a party to the subsequent proceeding making distribution of the damages awarded as aforesaid.

Further: It will be observed from a reading of the statute that it provides, in substance, that if certain prerequisites as to notice, etc., set forth in the statute, are fulfilled, then all persons, whether they have "appeared" in the proceeding "or not," are thereafter barred from bringing any action to recover compensation for the "damages considered and passed upon by the commissioners" in such proceeding, but only such damages as have been so *considered and passed upon* are thereby barred of future recovery.

The record furnished by the commissioners' report in the Spencer land condemnation proceedings is relied on by the railroad company to evidence the fact that the damages to plaintiff's dwelling-house land and dwelling house thereon sought to be recovered in this action, were "considered and passed upon by the commissioners" in such condemnation proceeding.

If the commissioners' report does show this, with the certainty which the law requires in such case, in the absence

37

of fraud (and none is alleged in the instant case) the report is conclusive of that fact in a collateral proceeding (such as this is).

The only portion of the commissioners' report aforesaid which can be relied on to establish the fact aforesaid is the following:

"We are of opinion, and do ascertain, that for the said part" (of the Spencer land) "and *for other property so taken,* $1,350.00 will be a just compensation, and the damages to the adjacent and *other property of said tenants or owners*" (of the Spencer land) "and to the *other property of other persons, who will be damaged* in their property by reason of the construction and operation of the works of said company   *   *   *   are $150.00."

It will be observed that this on its face presents a case of a report awarding, and not denying damages. First, so considering the report—

The precise question before us is, does it appear from such language of such report with any reasonable degree of certainty that a part of the $150 damages awarded was awarded as damages to the plaintiff's property last above mentioned?

It is apparent that some of the language employed in reporting the damages considered and passed upon by the commissioners was unquestionably copied, and did not report an actual consideration of and passing upon damages. For instance, the report states that the $1,350 was ascertained as a just compensation not alone for the "said part" of the Spencer tract "so taken," which was the fact as disclosed by the record of the proceeding set forth in the above statement, but that such $1,350 was also *"for the other property so taken."* There was no such other property taken. The proceedings being statutory, the plain mandate of subsections 4 and 8 of said eminent domain statute, requiring a description of any "other property" proposed

to be *taken* to be contained in the petition and report, could not be ignored as a prerequisite to such *taking*. No such description was contained in such proceedings under consideration, and no such property was even sought to be taken in such proceeding.

Again: The report states that the commissioners ascertained that "the damages to the adjacent and *other property of said tenants or owners,* and to the property of other persons who will be damaged in their property * * * are $150.00." Now, there was no *"other property* of said tenants or owners" (meaning the tenants or owners of the Spencer land), as to which damages could have been "considered and passed upon" by the commissioners, except the residue of the Spencer tract adjacent to the part of that tract "taken," as shown by the record. This being so, it seems manifest to us that the commissioners were using some form for their report which, in the particulars mentioned, probably copied the language of the eminent domain statute, or of the petition of the railroad company in the proceedings, or of the order of court appointing them, quoted in the statement preceding this opinion, and that such language was inapplicable to and did not report the actual action of the commissioners in such particulars. That no such action occurred is disclosed by the face of the record, such report notwithstanding, when the report is read in the light of the whole record in the condemnation proceeding.

How, then, stands the question of whether the commissioners, as a matter of fact, did consider and pass upon the damages to the dwelling-house land and dwelling thereon of the plaintiff? The only language in the report which can be relied on to show such fact is the sentence, included in the above quotation, in which the commissioners' report $150 as the "damages to the adjacent and *other property of said tenants and owners,* and *to the property of other persons* who will be damaged in their property. * * *" As

we have pointed out, no portion of the $150 was in fact awarded as damages to "other property of said tenants or owners." Can it be said from the report with any reasonable certainty that any portion of the $150 was awarded as damages "to the property of other persons * * *?" Is it not equally probable that the language of the report which is relied on by the railroad company to have the effect of making the commissioners so report, was copied, as aforesaid, and no more reported or was intended to report actual action of the commissioners than did the other language in the same sentence which, as we have just seen, was merely formal and was probably so copied. To say the least of the language under consideration, as was in part said in the case of *C. & O. Canal Co.* v. *Hoye,* 2 Gratt. (43 Va.) 514, of a similar ambiguity in a report of commissioners in a condemnation proceeding: "It is probable the words * * * were copied from the terms of the act" (or from the papers in the condemnation proceeding aforesaid) ; "and that no damages were allowed for this reason. Their finding is uncertain. * * *"

It is true that the case last cited is not one in which the report of the commissioners was drawn in question in a collateral proceeding, as in the instant case, but it is helpful as disclosing the view taken by this court of the definiteness and certainty which should characterize such reports and of the principle involved.

But wholly aside from the matters of uncertainty aforementioned, the report of the commissioners in the instant case, in the language above quoted, relating to the award of the $150 damages, contains another serious and, as we shall presently see, fatal ambiguity, even if the view be taken of it that the commissioners meant to report any damages to "other property of other persons," or that they had "considered and passed upon" the damages now sought to be recovered by the plaintiff, and had allowed or denied an

award of anything as such damages.  The report upon such
view of it, either awards the $150 damages to three sep-
arate, different and distinct properties, to-wit, (1) the ad-
jacent Spencer land, being the residue of the Spencer tract
not taken; (2) other property of the tenants or owners of
the Spencer land, and (3) "to the other property of other
persons," or it awards such damages to the adjacent Spen-
cer land and denies any damages to the other property of
the tenants or owners of the Spencer land and "to the other
property of other persons."

What "other property" and what "other persons" are
meant?  It is impossible to determine these questions from
the report.  It does not say *all* other property, or *all* other
persons.. (We should perhaps say in passing, however, that
we do not mean to hold that the use of the word "all" in
this connection would have removed the ambiguity under
consideration.)   For aught that the report contains, the
commissioners may have considered and passed upon the
damages to the property of A and B, or any other two or
more persons, and never considered the damages to the
property of the plaintiff last above mentioned.  The only
fact which it could be claimed that the report evidences as
to what damages "to other property of other persons" the
commissioners considered and passed upon, is that they
awarded a part of the $150 as damages, or denied the award
of any damages to the property of other persons (in the
plural number), the persons being unnamed and the prop-
erty otherwise unidentified.   Such a report, manifestly,
supplies no record evidencing that damages to any par-
ticular property of any person, other than the Spencer prop-
erty, were considered and passed upon by the commission-
ers, favorably or unfavorably, by being awarded or denied;
and clearly it does not show that the damages to the plain-
tiff's property under consideration were considered and
passed upon by the commissioners by being awarded or de-

nied. That is to say, the commissioners' report furnishes no evidence whatever on that subject.

[16] It would be easy enough in all cases of condemnation for the commissioners to state in their report specifically what cases they in fact consider on the question of damages and the results of their action, whether in awarding or denying the award of damages, in each case considered, so that when any subsequent suit for damages is instituted the report may be turned to for evidence upon the question of whether such damages have or have not been considered and passed upon in the condemnation proceeding. Such a procedure would be but fair alike to companies exercising the right of eminent domain and to property owners affected. And that the report of the commissioners should measure up to such requirement is, we think, the true intent and meaning of the eminent domain statute aforesaid. Only by such a procedure can such companies be freed from the danger of being vexed with suits for damages which have been awarded and paid, and property owners be relieved from the danger of the effort being made to deprive them of their right to have their *bona fide* claims of damages in fact passed upon and adjudicated, so that such property right may not be taken away without due process of law by some constructive adjudication which never in truth occurred.

The general rules prevailing on this subject are considered in Chapter XXI of Lewis on Eminent Domain (3d ed.), especially in sections 764, 766 and 767. We refrain, however, at this time from a more specific holding in the premises than that made in the next preceding paragraph, since the decision of the case before us does not require it.

6. There were rulings of the trial court on questions of the admission or exclusion of testimony which are made the subject of assignments of error numbers II and III, on pages 2 and 3 of the printed petition for writ of error in the

instant.case, but as they raise no novel questions, we deem it unnecessary to say more of them than that we are of opinion that there was no error in such rulings of the court below.

7. There were instructions asked for by the plaintiff which were refused by the trial court, which are not set forth in the statement of the case preceding this opinion as they do not raise any questions upon the facts of this case not otherwise raised in the record. It is deemed sufficient to say of such instructions that some of them are in conflict with the views above expressed and as a whole they are not so framed as to be applicable on a new trial of the case in accordance with this opinion.

For the reasons stated above, we are of opinion to set aside the verdict and judgment under review and award the plaintiff a new trial, to be had, if she is so advised, not in conflict with the views expressed in this opinion.

*Reversed.*