# Richmond.

## SOUTHERN RAILWAY COMPANY V. FITZPATRICK.

### January 20, 1921.

1. WATERS AND WATERCOURSES.—*Flooding Land—Railroad Embankment.*—A railroad company, in double tracking its road, raised its grade 16 or 18 feet, causing great quantities of water to run down from the sides of the fill upon the property of an adjoining landowner, the water, in part, being conducted through a drain pipe placed on the embankment and discharged on the land of the landowner.

   *Held:* That the landowner was entitled to recover for the damages done to her property by collecting and discharging the water thereon.

2. EMINENT DOMAIN.—*Damaging Property—Smoke and Cinders.*— The casting of great quantities of smoke, cinders, dust, and dirt by a railroad company upon the store and dwelling of an adjoining owner of land is a damage, within the meaning of the Constitution of 1902, which forbids the taking or damaging of private property for a public use without making just compensation therefor.

3. EMINENT DOMAIN.—*Damaging Property—Smoke and Cinders— Case at Bar.*—A railroad company by raising the grade of its tracks discharged great quantities of smoke, cinders, etc., upon the property of an adjoining landowner. At the time the tracks were raised additional land was condemned by the company alongside its original right of way, and upon this additional strip it placed one of its main line tracks and sidings.

   *Held:* That there could be no recovery by the adjoining landowner for the additional amount of smoke and cinders discharged from the original line, but that for smoke and cinders discharged from the new location there could be a recovery by the landowner.

4. EMINENT DOMAIN.—*Damaging Property—Smoke and Cinders— Case at Bar.*—Where a railroad company in double tracking its line raised its track and condemned an additional strip

of land upon which it placed one of its main lines and sidings, an adjoining landowner is entitled to damages for smoke, cinders, and dirt from engines and trains operating on the tracks on the new location, although that location was further from the plaintiff's property than the old; and the damage from the new location was less than that from the old. There was a new location and a new construction thereon, and the company had no right to impose *any* damage from the new location.

5. EMINENT DOMAIN.—*Damaging Property—Smoke and Cinders— Joint Tort—Additional Servitude—Case at Bar.*—In the case of a joint tort by two or more, each one is guilty of some part of the tort, and the law will not attempt to apportion it, and so each is held liable for the whole. In the case of an additional servitude, the addition is on the same land as the original. But in the instant case there was a new damage from a new location of some of its tracks by the railroad company, and also an additional damage from the old location, both done by the railroad. This was neither a joint tort nor an additional servitude, and the damage may be apportioned between the new location and the old.

6. EMINENT DOMAIN.—*Power of Legislature—Constitutional Restriction.*—The power of eminent domain and the manner of its exercise resides in the legislature, except so far as it may be restrained by the Constitution. Since the adoption of the Constitution of 1902, providing that the legislature shall not enact any law whereby private property is taken without just compensation, the legislature has not enacted and cannot enact any law in violation of that constitutional provision. It is immaterial whether a railroad company acts in its public or private capacity. In neither aspect can it take or damage private property for its use without making just compensation therefor.

7. EMINENT DOMAIN.—*Person Not a Party to the Proceeding— Right of Action.*—If the owner of private property, which is damaged, but not taken, is not a party to the proceeding to condemn the property of another, and his rights have not been passed upon, he may maintain an action at law to recover just compensation. The right to recover such compensation is not restricted to the proceeding in which the right of eminent domain is exercised.

8. LIMITATION OF ACTIONS.—*Railroads—Cinders and Smoke.*—Damage to an adjoining landowner caused by cinders and smoke from a railroad track cast upon his land is permanent and

continuous, and entire damages are recoverable in a single action, and the limitation in such case is five years under Code of 1919, section 5818.

9.   EMINENT DOMAIN.—*Damages—Evidence.*—In an action by an adjoining landowner for damages occasioned by the raising of the roadbed of a railroad, evidence as to the difference between the market value of plaintiff's property before and after the erection of the fill was inadmissible, where the diminution in market value resulted from several causes, for one of which the railroad was not answerable in damages.

10.   EMINENT DOMAIN.—*Damages—Evidence.*—In an action by an adjoining landowner for damages occasioned by the raising of the roadbed of a railroad, evidence of the damage to be apprehended from trains running off the embankment, and injuring plaintiff's property and endangering the lives of the occupants of the buildings thereon, is not admissible. Such damage, if not purely speculative, was covered by the original condemnation of the railroad's right of way.

Error to a judgment of the Circuit Court of Nelson county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*J. T. Coleman, Jr.,* for the plaintiff in error.

*S. B. Whitehead* and *Caskie & Caskie,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

In the year 1860 the predecessor in title of the Southern Railway Company acquired title by condemnation to a strip of land through the lands of James M. Dillard for the purpose of constructing a steam railroad, and subsequently constructed said railroad thereon. Afterwards Dillard sold to the predecessor in title of the defendant in error a lot

on the east side of, and adjacent to, said right of way.   The company established a depot on its right of way on the same side thereof as the lot aforesaid, put in the usual sidings on its right of way, and operated its road as a single track railroad until 1914.   This depot, or station, is known as Tye River depot. · In 1914 the company determined to double track its road, and, where desirable, to change its grade.   In order to accomplish this purpose, it was found necessary to acquire additional land and to raise the grade of the track at Tye River depot.   The company, thereupon, by condemnation proceedings, acquired an additional strip of land from Annie L. Miller on the west side of and adjoining its existing right of way, which is on the side opposite to the property of Mrs. Fitzpatrick, the defendant in error.   Mrs. Fitzpatrick was not a party to that proceeding.   After acquiring the necessary additional land, the Southern Railway Company, hereinafter called the company, constructed its double track railroad, with necessary sidings, raised its grade sixteen or eighteen feet, and moved its depot to the opposite or western side of the track and about 600 feet further north.   In the construction of this double track, the tracks were moved about thirteen feet further from the Fitzpatrick property than the original single track road.   Only the northbound track and a short storage track were put on the line of original condemnation.   The southbound track, the Virginia Blue Ridge interchangeable tracks and cross-overs, were placed on the land acquired in the condemnation proceedings against Annie L. Miller.   The lot of Mrs. Fitzpatrick is only seven feet distant at the nearest point from the line of original condemnation of the company.   Upon this lot is located a storehouse and dwelling.   The present action of trespass on the case was brought by Mrs. Fitzpatrick to recover damages resulting from the new construction.

32

There was a demurrer to the declaration which was overruled. The defendant pleaded the general issue and a special plea of the statute of limitations, upon which issues were joined, and the parties went to trial. Upon the first trial there was a hung jury. At the second trial, there was a verdict and judgment for the plaintiff for $800, and to this judgment the present writ of error was awarded.

The gravamen of the plaintiff's complaint—that is, the injury specially and particularly complained of—is the damage resulting from raising the grade of the tracks some sixteen or eighteen feet, resulting in the discharge of great quantities of smoke, cinders, dust and dirt upon the plaintiff's premises, but the notice also clearly and distinctly charges that "great quantities of water have run down from the sides of said fill in and upon the property of the plaintiff," causing great damage thereto. Both sides took testimony on the latter subject, and the testimony for the plaintiff shows that the damage resulting therefrom was of the most serious nature. This water, in part, was collected in and conducted through a drain pipe placed on the embankment by the defendant, and discharged on the land of the plaintiff. In speaking of the damage done by the water, the plaintiff's husband testified, that "they have got a six or eight inch pipe to draw rainwater for hundreds of yards," which is discharged upon the plaintiff's yard and garden, and which has cut great ditches through the garden and practically destroyed it. The plaintiff herself testified: "It is like a river when it comes a hard rain. It comes down my front steps and the walk is left covered with mud and the steps are now covered with mud and grass growing on them, and we couldn't keep it off, and could look behind it and see what gullies had washed, and it comes down in the garden and washes the dirt off the vegetables that grow under the ground and the vines * * *" It also appears

from the notice that in 1914 and 1915 the defendant condemned additional land adjacent to its old right of way; and on the opposite side of the old right of way from the plaintiff's land for the purpose of double tracking its main line, and that its right of way was widened to make room for the additional track and that the plaintiff sustained damage in consequence thereof. The notice is not as explicit as to this element of damage as it should be, and if the plaintiff intends to claim this damage she should be required to amend her notice and state more explicitly and fully the nature and extent of the damage claimed, when the case is remanded, as it must be, for a new trial.

[1] Upon the pleadings and proof, it seems plain that the plaintiff is entitled to recover for the damages done to her property by collecting and discharging the water thereon, as aforesaid, but that damage is not measured by the difference between the market value of the plaintiff's property before and after the erection of the fill aforesaid. That was not the only cause of the depreciation in the market value of the property. The evidence introduced at the trial shows plainly that the greatest damage done the plaintiff arose from the discharge of smoke, dust, etc., upon her premises consequent upon the erection of the fill. Counsel for the plaintiff in error ignores the damage done by water, and devotes his argument to a denial of right of recovery for the damages done by smoke, dust, etc.

[2, 4] The Constitution of 1902 forbids the taking or *damaging* of private property for a public use without making just compensation therefore. It cannot be denied that the casting of "great quantities of smoke, cinders, dust and dirt" by a railroad company upon the store and dwelling of an adjoining owner of land is a damage within the meaning of the Constitution. But the company insists that these damages are covered by the original condem-

nation, under which it has the right to raise or lower its grades at will, and that this right is not affected by the Constitution of 1902. This would have been true if the company had confined itself to the original right of way condemned, but it did not do this. In 1914 it condemned an additional strip of ground alongside of its original right of way, and upon this additional strip it placed one of its main line tracks, and sidings. There could be no recovery for any additional amount of smoke, cinders, dust and dirt discharged from the original line, but that gave the company no right to make such discharge from a new and different location. Nor is it any answer to the plaintiff's claim that the new location is further from the plaintiff's property than the old, nor that the damage from the new location is less than it was from the old. There has been a new location and a new construction thereon, and the company has no right to impose *any* damage from the new location. The fact that the new location is parallel to and adjoins the old does not take away from the plaintiff the right to recover whatever damage is inflicted from the new location. So far as it injuriously affects the plaintiff's property, the company has no right to be there without making just compensation. It is a new damage inflicted from the new location acquired since 1902.

[5, 6] In the case of a joint tort by two or more, each one is guilty of some part of the tort and the law will not attempt to apportion it, and so each is held liable for the whole. In the case of an additional servitude, the addition is on the same land as the original. But here there is a new damage from a new location, and also an additional damage from the old location, both done by the same party. This is neither a joint tort, nor an additional servitude. So far as the plaintiff is damaged by the discharge of smoke, dust, etc., or the mere raising or lowering of the

grade on the old location, it is not accountable to the plaintiff, as the damage so caused is covered by the condemnation of 1860. ·But, so far as it was inflicted from the new location, the plaintiff is entitled to recover. *Pamplin* v. *Norfolk & W. Ry. Co.*, 124 Va. 254, 98 S. E. 51. Section 58 of the Constitution of 1902 declares, that "the legislature shall not enact any law whereby private property may be taken or damaged for public uses, without just compensation." The power of eminent domain and the manner of its exercise resides in the legislature, except so far as it may be restrained by the Constitution. Since the adoption of the Constitution of 1902 the legislature has not enacted and cannot enact any law in violation of that constitutional provision. It is immaterial whether a railroad company acts in its public or private capacity. In neither aspect can it take or damage private property for its use without making just compensation therefor. It is unnecessary, therefore, to consider prior decisions of this court in cases which arose before the adoption of the Constitution of 1902, which, for the first time, contained the words, "or damaged."

[7] If the owner of private property, which is damaged but not taken, is not a party to the proceeding to condemn the property of another, and his rights have not been passed upon, he may maintain an action at law to recover just compensation. The right to recover such compensation is not restricted to the proceeding in which the right of eminent domain is exercised. *Pamplin* v. *Norfolk & W. Ry. Co., supra.*

[8] The plaintiff's claim accrued in 1914, the injury was permanent and continuous and entire damages were recoverable in a single action. This action was brought in 1918, and as the limitation in such case is five years (Code, sec. 5818), the plaintiff's claim is not barred.

It is unnecessary to go into a discussion of each one of the assignments of error and cross assignments. It results from what we have stated that Mrs. Fitzpatrick is entitled to recover whatever damage she has sustained from the collection and discharge by the railroad company of surface water on her premises, and, if her notice of motion is amended as hereinbefore indicated, also the damage sustained by her resulting solely from the new construction. The railroad company is not liable to her for damages resulting from changing the grade, running more trains or increasing the volume of smoke, dust, cinders, etc., from the old location of its track, but is liable for all the damages resulting from the construction of its tracks and the operation of its trains upon the new location.

[9, 10] Instruction 5, given for the plaintiff, is in conflict with the foregoing views, and it was error to have given it. Instructions A, B and D, for a like reason, were properly refused, and there was no evidence to support instruction C. Instruction 4, given for the defendant, was misleading, as it did not distinguish between operations upon the old and new locations, and hence it was error to have given it. The trial court committed no error in refusing to allow real estate agents to give their opinions as to the difference between the market value of the plaintiff's property before and after the erection of the fill, as that was not the proper measure of the plaintiff's recovery. The market value of the property was seriously affected by the erection of the fill, but so far as the erection was on the old location it was not damage for which the company was liable to the plaintiff. In so far as the plaintiff's damage consisted of diminution of the market value of the property, it should have been restricted to diminution in consequence of the collection and discharge of surface water from the old location and of construction on the new location. The trial

court, however, did err in admitting evidence of the damage to be apprehended from trains running off the track on the embankment and injuring the plaintiff's property and endangering the lives of the occupants of the buildings thereon.   Such damage, if not purely speculative, is covered by the original condemnation.

The judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded to the circuit court for a new trial to be had in conformity to the views hereinbefore expressed.

*Reversed.*