# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## The Chesapeake and Ohio Railway Company v. Ricks.

### November 18, 1926.

1. Railroads—*Public Rights and Private Rights.*—A railroad company has public rights and private rights, and the latter cannot be exercised to the prejudice of another.

2. Railroads—*Public Rights and Private Rights.*—If the right exercised is a mere adjunct or incident to the power conferred, but is not necessary to the performance of the duty imposed, then the right is private. Thus the erection of some structure by the railroad for its convenience in the discharge of its duties, and which might have been erected elsewhere without the damage complained of, such as power houses, roundhouses, coal chutes, stationary engines, or a "hump" in the track, is the exercise of a private right, if the site selected was not necessary for the discharge of its public duties.

3. Railroads—*Public Rights and Private Rights—Sidings at Stations.*—Sidings at stations are absolutely essential to the conduct of the business of railroading. Neither depot freight nor carload freight can be handled without them, and it is the duty of the railroad company to provide whatever sidings are necessary for the public convenience, and if it fails to provide them it may be compelled to do so. Therefore, the provision of necessary sidings is the exercise of a public right. Unlike roundhouses, coal chutes and the like, they cannot be constructed elsewhere, but must be constructed at the station where the freight is to be handled. It is a public necessity, and not a mere private convenience.

4. Railroads—*Public Rights and Private Rights—Extension of Yards—Case at Bar.*—In the instant case, an action for damages to plaintiff's land by the extension of sidings in defendant railroad's yard, the sidings complained of were "absolutely necessary" for the public convenience and the legislature must have "contemplated the doing of the very act which occasioned the injury" complained of. The defendant therefore in extending its yards was discharging a public duty.

5. Railroads—*"Depot"—Yards.*—Depot is generally understood to be the place where a carrier is accustomed to receive merchandise, deposit it, and keep it ready for transportation or delivery. Thus a railroad yard may be its depot for carload freight.

6. RAILROADS—*Action for Damages to Property by Switching Operations—Public Use—Case at Bar.*—The instant case was an action by a land owner for damages to his property arising out of the switching operations of a railroad after the necessary enlargement of the railroad yard.

    *Held:* That the switching operations were a public use.

7. EMINENT DOMAIN—*Just Compensation.*—Under Constitution of 1902, section 58, and chapter 176 of the Code of 1919, private property cannot be taken or damaged even for a public use without just compensation.

8. EMINENT DOMAIN—*Just Compensation—Damage to Residue of Land—Extending Railroad Yard—Case at Bar.*—In the instant case a railroad company condemned land of plaintiff's predecessor in title and compensation was paid to him not only for the land condemned but "for damages to the residue of the tract." Afterwards it became necessary for the railroad to place more tracks on the land condemned.

    *Held:* That if damage resulted to plaintiff from this use of the land, it was damage for which his predecessor in title received compensation in the condemnation proceedings, and could not be claimed again. The damages paid covered the damages thereafter accruing to the residue of the tract.

9. RAILROADS—*Public and Private Rights—Erection of a Coal Chute—Case at Bar.*—The instant case was an action by a nearby landowner. against a railroad for damages from the erection and maintenance of a coal chute by a railroad.

    *Held:* That the erection and maintenance of the coal chute was not done for the public benefit but for the private convenience of the railroad company. It was done in its private capacity and it was therefore liable to plaintiff for any damages to his property from its erection.

10. DEMURRER TO THE EVIDENCE—*Conflicting Evidence—General Rule.*—On a demurrer to the evidence if a single witness for the demurree testifies to a state of facts, inherently credible, which would entitle him to recover, judgment must be entered in his favor, although a dozen or more witnesses, equally credible, testify to the contrary.

11. QUESTIONS OF LAW AND FACT—*Credibility and Weight of Testimony.*—The jury are the sole judges of the credibility of the witnesses and the weight of their testimony.

12. RAILROADS—*Action for Damages to Landowner from Operation of Railroad Yard—Setting Aside Verdict of Jury—Case at Bar.*—In the instant case, an action by plaintiff against a railroad company for damages to plaintiff's land from the operation of the railroad's yard, a verdict in favor of plaintiff cannot be disturbed where the defendant was clearly liable for a part of the damage. There was no exception to the verdict as excessive, and the appellate court had no means

of determining what portion of the entire damage suffered was properly chargeable to the legitimate use of the tracks, and what to the illegitimate use thereof.

13. Damages—*Damage to Landowner from Exection of Coal Chute—Questions of Law and Fact.*—The amount of damages sustained from an injury of this kind is peculiarly a question for the jury.

14. Railroads—*Nuisance—Location of Coal Chute.*—Whether or not the location of the coal chute by a railroad company constitutes a nuisance for which damages may be recovered cannot be determined by its distance from the property of the plaintiff, but must be determined from all the facts and circumstances of the particular case.

Error to a judgment of the Circuit Court of Alleghany county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry,* for the plaintiff in error.

*Revercomb & Revercomb,* for the defendants in error.

Burks, J., delivered the opinion of the court.

This case was heard in the trial court on a demurrer to the evidence by the railway company, and must be so considered here. Viewing the case from that standpoint, the facts are as follows:

In 1860, the predecessor in title of the railway company, hereinafter called the defendant, condemned a right of way for a railroad through the lands of William Scott near the town of Covington, paying for the land taken, and for damages to the residue of the tract, the sum of $2,600. The lot owned by the plaintiffs is a part of the residue of the Scott tract, now situate in the town of Covington, and adjoins the land condemned. Prior to 1923, the nearest rail of the defendant's double track railroad was sixty-five

feet from the plaintiffs' dwelling and about fifty feet from their line, and there was a lead track into defendant's Covington yard about 200 feet west of plaintiffs' dwelling, which dwelling they had purchased about twenty-five years prior thereto and have since occupied. The Covington yards in 1923 consisted of five or six sidetracks and the two tracks of the main line. The defendant kept on this yard two yard engines and part of the time four engines of its Warm Springs and Potts Creek branches, which terminated at Covington, all of which were coaled from coal cars on the siding some 1,050 feet west of plaintiffs' residence. The plaintiffs suffered no inconvenience from this use by the defendant of its yard and made no complaint thereof.

In recent years the business of the Covington station had so increased in consequence of the establishment and development of industries at Covington that the defendant had to handle at that station about 200 loaded cars a day, besides empties, consisting of freight either originating at Covington or received for consignees at that point. No through freight is handled on the yard, nor are the tracks used for any freight except that originating at or destined to Covington. The business of the station increased to such an extent that it became necessary in 1923 for the defendant to increase its facilities by extending its yard, in order to accommodate the Covington public. This it did by putting in two side tracks and a lead track on a part of its original right of way acquired by condemnation in 1860. These tracks passed between the defendant's main line and the plaintiffs' property, and threw the nearest rail of the lead track within four feet of the plaintiffs' line and about twenty feet from their dwelling. The entrance to the two side

tracks and the lead track was placed east of the plaintiffs' property. The defendants also erected a coal chute at about the point where it formerly coaled from cars, 1,050 feet west of plaintiffs' dwelling. This chute uses one car of seventy-five tons of coal every other day. The lead track furnishes access to the chute and also to the other six or seven tracks of the yard. Engines on the yard are coaled from this chute, but are not stood or cleaned on the lead track. It must be accepted as a fact proved that as a result of the extension of these tracks and the use made of them by the defendant, the plaintiffs' property has been damaged fifty per cent. of its value, or about $3,000. The jury found $1,300, subject to the opinion of the court on the demurrer to the evidence. The trial court overruled the demurrer, and entered judgment for the plaintiffs on the verdict.

The plaintiffs do not charge or prove any negligence on the part of the defendant, and there was none, but allege a nuisance from the dust, dirt, smoke, noise and vibration resulting from placing the tracks so near their house, and the constant use, day and night, of the tracks for the purposes of the defendant. They say that the use is a private and not a public use, and hence the defendant is liable therefor.

We shall first consider the construction and use of the side tracks, and the lead track, without the coal chute.

[1, 2] That a railroad company has public rights and private rights, and that the latter cannot be exercised to the prejudice of another, is fully recognized and discussed in many cases, and the discussion need not be here repeated. See *Fisher* v. *Seaboard Air Line R. Co.*, 102 Va. 363, 46 S. E. 381, 1 Ann. Cas. 622; *Townsend* v. *Norfolk Ry. & L. Co.*, 105 Va. 22, 52 S. E.

970, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Ann. Cas. 558; *Terrell* v. *Ches. & O. Ry. Co.*, 110 Va. 340, 66 S. E. 55, 32 L. R. A. (N. S.) 371; *Southern Ry. Co.* v. *McMenamin*, 113 Va. 121, 73 S. E. 980; *Killam* v. *Norfolk & W. Ry. Co.*, 122 Va. 541, 96 S. E. 506, 6 A. L. R. 701; *Pamplin* v. *Norfolk & W. Ry. Co.*, 124 Va. 254, 98 S. E. 51; *Balt. & O. Ry. Co.* v. *Fifth Baptist Church*, 108 U. S. 317, 2 S. Ct. 719, 27 L. Ed. 739, 22 R. C. L. 750, 751-2. If the right exercised is a mere adjunct or incident to the power conferred, but is not necessary to the performance of the duty imposed, then the right is private. In all of the Virginia cases in which the right exercised has been held to be private, it has consisted in the erection of some structure by the company for its convenience in the discharge of its duties, and which might have been erected elsewhere without the damage complained of, such as power houses, roundhouses, coal chutes, stationary engines, or a "hump" in the track. In none of them was the site selected necessary for the discharge of its public duties.

[3] Sidings at stations are absolutely essential to the conduct of the business of railroading. Neither depot freight nor carload freight can be handled without them, and it is the duty of the railroad company to provide whatever sidings are necessary for the public convenience, and if it fails to provide them it may be compelled to do so. Section 156, Va. Const.; Code, sections 3907, 3927, 3990, 4006; *Zircle* v. *Southern Ry. Co.*, 102 Va. 17, 45 S. E. 802, 102 Am. St. Rep. 805. This is a public duty, and because of that fact, the power to construct them is inherent in the power to construct and operate the road. Unlike roundhouses, coal chutes and the like, they cannot be constructed elsewhere, but must be constructed at the station

where the freight is to be handled.   It is a public necessity, and not a mere private convenience.

It is a matter of common knowledge that there has been a station at Covington ever since the railroad was constructed, and there has rested on the defendant the public duty of providing whatever sidings were necessary for the public convenience.   The predecessor in title of the defendant provided for the performance of this duty in 1860 when it condemned seven acres of the Scott land for railroad purposes.   Not until 1923 did the public convenience require it to use all of this land for the purpose of sidings, but at that time the carload freight originating at Covington or consigned to patrons at that point had increased to such an extent as to necessitate the extension of the sidings which was then done.   The train master of the defendant at Covington was asked to "state whether it is absolutely necessary to handle this traffic for these industries by these side tracks and this lead track by Mr. Ricks' place;" to which he replied: "Absolutely necessary."   There was no conflict of testimony on this subject.

[4] In chartering the railroad the legislature must have contemplated, and hence authorized, the construction and operation of all sidings necessary for the convenience of the public.   The sidings complained of were "absolutely necessary" for the public convenience, and the legislature must have "contemplated the doing of the very act which occasioned the injury" complained of.   The defendant was charged with the duty, as a public carrier, of receiving and transporting all freight tendered to it by the public for transportation, and when it became "absolutely necessary" to extend its yards to the east in order to accomplish this result, it was discharging a public duty.

*Killam* v. *Norfolk & W. Ry. Co.*, *supra*, was a switching operation at a terminal point, and it is intimated that if it had been to serve a passenger station or freight depot no recovery could have been allowed. Depot, in that connection, must not be given too restricted a meaning.

[5] In Words & Phrases (1st Ser.), among the definitions of "depot" we find the following: "Depot is generally understood to be the place where a carrier is accustomed to receive merchandise, deposit it, and keep it ready for transportation or delivery. *Maghee* v. *Camden, etc., Transp. Co.*, 45 N. Y. 514, 520 [6 Am. Rep. 124]."

"As applied to railroads, a depot is a place where passengers are received and deposited, and where freight is deposited for delivery. *Maghee* v. *Camden, etc., Transp. Co.*, 45 N. Y. 514, 520 [6 Am. Rep. 124]; *State* v. *New Haven & N. Co.*, 37 Conn. 153, 163 (cited and approved in *Plunkett* v. *Minneapolis S. S. M. & A. R. Co.*, 79 Wis. 222, 48 N. W. 519; *Fowler* v. *Farmers' Loan & Trust Co.*, 21 Wis. 77-79)."

In the instant case, by far the greater part of the freight coming into and going out of Covington was in carload lots, never intended to be put into the defendant's building, and the switching operations were as much a service to its freight depot as if it had been for parcel freight delivered into its depot building. Its yard was its depot for carload freight. Receiving, loading, unloading, switching and delivering are as essentially parts of transportation as the act of transit. *Southern Ry. Co.* v. *Com'th*, 107 Va. 771, 776, 60 S. E. 70, 17 L. R. A. (N. S.) 364.

[6] We must conclude that the switching operation here involved, independently of the coal chute, was a public use.

[7, 8] Under the present law, however, private property cannot be taken or damaged even for a public use without just compensation.   Virginia Constitution, section 58, Code, chapter 176.   But it must be borne in mind that the plaintiffs below are successors in title to William Scott of the residue of his tract after deducting the land condemned, and that there was paid to him $2,600, not only for the land condemned, but "for damages to the residue of the tract."   Placing the two sidetracks and the lead track on the land condemned for a public use was a use for the very purpose for which it was condemned.   If damage resulted from this use of the land, it is damage for which Scott received compensation in the condemnation proceedings and cannot now be claimed again by his successor in title.   The damages paid covered the damages thereafter accruing to the residue of the tract.

In *Pamplin* v. *Norfolk & W. Ry. Co.*, 124 Va. 254, 277, 98 S. E. 51, 59, it is said:   "A railroad company, in the absence of such statute or of a similar requirement in its charter, at the time of the location and acquisition of the right of way, on a parcel of land which is a part of a larger tract, having acquired a right of way of a certain width by condemnation proceedings, is, as between it and the owner of the residue of such tract of land, and those in privity of estate with the latter, bound by no limitation upon the height to which it may construct its works thereon and operate the same, and change such height of construction and operation thereon of its trains from time to time, except such limitation as may arise from its duty to keep within the reasonable requirements of the discharge of its duties as a public service corporation and the further requirement of law that such con-

struction and operation shall be done in a reasonably skilful and proper manner.

"There being no statute enforcing upon railroad companies a fixing of a limitation upon the construction and operation of its works prior to its purchase of a right of way, unless it voluntarily does so, a conveyance to it of land for its right of way will operate to confer upon it, as between it and the grantor and those in privity of estate with the latter, as aforesaid, the unlimited right of construction and operation of its works upon the land conveyed, at such height from the natural surface of the ground as its requirements aforesaid and reasonably skilful manner of construction and operation from time to time may dictate." See also what is said in *Southern Ry. Co.* v. *Fitzpatrick,* 129 Va. 246, 105 S. E. 663.

[9, 10, 11] The erection and maintenance of the coal chute was not done for the public benefit, but for the private convenience of the railroad company. It was done in its private capacity. *Southern Ry. Co.* v. *Mc-Menamin,* 113 Va. 121, 73 S. E. 980. But the evidence of the damage resulting from its location is so indefinite and unsatisfactory that had the question arisen under section 6251 of the Code, it might have been necessary to set aside any verdict for the plaintiffs because plainly contrary to the evidence. On a demurrer to the evidence, however, if a single witness for the demurree testifies to a state of facts, inherently credible, which would entitle him to recover, judgment must be entered in his favor, although a dozen or more witnesses, equally credible, testify to the contrary. The reason assigned is that the jury are the sole judges of credibility of the witnesses and the weight of their testimony, and if they might have so found the court must so decide.

[12] The complaint was of damages done by engines and trains entering the lead track east of the plaintiffs' house. The coal chute was erected 1,050 feet west of their house. The plaintiffs admit that they were not damaged by engines while being coaled and cleaned at the chute, but they testify that the coal to supply the chute was put in from the east end of the siding, and that some of the engines to be coaled were also put in from that end and carried by the plaintiffs' house to the chute, and that was a part of the damages claimed by them. If all the damages suffered by the plaintiffs were considered, there was ample evidence to support a verdict for $3,000 for the plaintiffs. The jury found $1,300. It is plain, however, from the testimony, even of the plaintiffs themselves, that the chief damage done the plaintiffs arose from the legitimate use of the tracks in putting in and taking out cars "at all hours of the day and night," destined to or from Covington. The jury may have taken this into consideration, as their verdict was for only $1,300, but whether they did or not we cannot disturb their verdict, as the defendant was clearly liable for a part of the damage, there was no exception to the verdict as excessive, and we have no means of determining what portion of the entire damage suffered was properly chargeable to the legitimate use of the tracks, and what to the illegitimate use thereof.

[13] The amount of damages sustained from an injury of this kind is peculiarly a question for the jury. *Southern Ry. Co.* v. *McMenamin*, 113 Va. 121, 73 S. E. 980.

[14] Whether or not the location of the coal chute by a railroad company constitutes a nuisance for which damages may be recovered cannot be determined by its distance from the property of the plain-

tiff, but must be determined from all the facts and circumstances of the particular case. This question is discussed by Keith, P., with his usual ability, in *Tidewater R. Co.* v. *Shartzer,* 107 Va. 562, 59 S. E. 407, 17 L. R. A. (N. S.) 1053. He concludes the discussion with the following language: "It is impossible to lay down any arbitrary rule upon the subject—certainly none based upon mere measurement. It will be for commissioners and juries, under the supervision of the courts, to determine upon the facts of each case whether or not there has been such damage to property as should be compensated. Of course, claims without merit will be preferred, but it will be the duty of those entrusted with the administration of the law—commissioners, juries and courts—to separate those deserving of compensation from those which are without merit."

The plaintiffs in the instant case do not show that they sustained any damage from standing engines at or near the coal chute, nor from coaling and cleaning them at that point. In fact, they do not show any damage resulting from the proximity of the coal chute. It is unnecessary, therefore, to enter upon any discussion of the distance of the coal chute from the plaintiffs' property. It is for the use of the lead track in supplying the chute with coal, and taking engines to the chute to be coaled that recovery is allowed.

Some damage was done to the plaintiffs' property in laying the additional tracks by not providing adequate drainage, but this was settled by the parties out of court.

Upon the whole case, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*